MATRAS v AMOCO OIL COMPANY

Docket No. 73356. Argued November 12, 1985 (Calendar No. 5).—
    Decided April 18, 1986.

   Edmund J. Matras brought an action under the Fair Employment
   Practices Act in the Wayne Circuit Court against Amoco Oil
   Company, alleging that his termination from employment with
   the defendant was the result of age discrimination. The court,
   William J. Giovan, J., entered judgment on a jury verdict for
   the plaintiff for lost wages and damages and denied the defen-
   dant's motion for judgment notwithstanding the verdict and
   the plaintiff's motion requesting attorney fees. The Court of
   Appeals, R. M. MAHER and CYNAR, JJ. (T. M. BURNS, P.J.,
   dissenting), reversed in an unpublished opinion per curiam,
   holding that there was insufficient evidence to submit the
   plaintiff's age discrimination claim to the jury and that the
   trial court erred in denying the defendant's motion (Docket No.
   62393). The plaintiff appeals.

      In an opinion by Justice LEVIN, joined by Chief Justice
   WILLIAMS and Justices BRICKLEY, CAVANAGH, and BOYLE, the
   Supreme Court *held:*

      Sufficient evidence was presented to enable a reasonable
   person to find that age was a determining factor in the defen-
   dant's decision to discharge the plaintiff.

      1. In reviewing a trial court's failure to grant a defendant's
   motion for a directed verdict or a judgment notwithstanding
   the verdict, the testimony and all legitimate inferences that
   may be drawn from it must be examined in the light most

·   REFERENCES FOR POINTS IN HEADNOTES
Am Jur 2d, Civil Rights §§ 226-242, 247, 499-513.
Am Jur 2d, Judgments §§ 106 *et seq.*
Am Jur 2d, Master and Servant §§ 43 *et seq.*
Am Jur 2d, Trial §§ 489 *et seq.*
Application of state law to age discrimination in employment. 96
    ALR3d 195.
Validity and construction of labor legislation prohibiting discrimi-
    nation on account of age. 29 ALR3d 1407.
See also the annotations in the ALR3d/4th Quick Index under
    Direction of Verdict; Discharge From Employment.
Am Jur 2d, Civil Rights §§ 446-448, 513.

favorable to the plaintiff. If reasonable jurors could honestly have reached different conclusions, the motion should have been denied. If reasonable jurors could disagree, neither the trial court nor the Supreme Court has the authority to substitute its judgment for that of the jury. In an age discrimination case, the question thus becomes whether the plaintiff has presented evidence which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that the plaintiff was discharged because of age. The jury can find that the discharge was because of age even if age was not the sole factor. Age does not have to be the only reason, or even the main reason, for the discharge, but it does have to be one of the reasons which made a difference in determining whether or not to discharge the plaintiff.

2. In this case, the plaintiff was discharged as a result of the defendant's lay-off plan that classified workers by age, sex, and race to maintain a fixed percentage of workers in each category. The evidence presented was sufficient for a reasonable person to find that age discrimination cou'.' have been a determining factor in the plaintiff's discharge. The plan did not provide protection to employees within the categories; rather, it gave each category either less or more protection, depending on how it compared to the others. Ultimately, the plan required unequal treatment because of age, sex, or race to maintain percentages of age, sex, and race. A review of all of the evidence and the inferences to be drawn from it leads to the conclusion that a reasonable person could have found that the discriminatory plan, and thus age, was a determining factor in plaintiff's discharge. The Court of Appeals erred when it set aside the jury's verdict.

3. The plaintiff may not recover attorney fees under the Civil Rights Act because his cause of action arose under the Fair Employment Practices Act and that act did not provide for recovery of attorney fees. Although employment discrimination actions may now be brought under the Civil Rights Act, the Civil Rights Act provides for recovery of attorney fees only in a civil action alleging a violation of the Civil Rights Act brought under that act.

Reversed and remanded.

Justice RILEY, dissenting, stated that in a case in which an employee alleges that his termination was the result of age discrimination, the employee must produce some evidence that age was a determining factor in the employer's decision to terminate him to justify submitting the question to the jury. The mere showing of termination, even where replacement of

the employee by a younger worker or retention of similarly qualified younger workers is shown, is insufficient. To assert that an inference of discrimination arises out of such a showing is to ignore the fact that in reducing a work force some employees inevitably will be terminated and to attach undue significance to even a slight age differential.

In this case, reasonable minds could not conclude that age was a determining factor in the defendant's decision to discharge the plaintiff. His termination occurred as part of a planned reduction in the defendant's work force, and two persons younger than the plaintiff and whose performance was rated the same as the plaintiff's were also discharged. In such situations it is inevitable that some persons will be terminated. The plaintiff presented no evidence that the process by which employees' performances were evaluated was applied differently to him individually or to workers of any particular age generally. On the record, it defies logic to conclude that the reduction plan required unequal treatment because of age.

Justice ARCHER took no part in the decision of this case.

## OPINION OF THE COURT

1. MASTER AND SERVANT — AGE DISCRIMINATION — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT — STANDARD OF REVIEW.

The standard of reviewing the failure of a trial court in an age discrimination case to grant the defendant's motion for a directed verdict or a judgment notwithstanding the verdict is whether the plaintiff presented evidence which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that the discharge was made on the basis of age.

2. MASTER AND SERVANT — AGE DISCRIMINATION — JURY.

In an age discrimination case, the jury may find that the discharge was because of age even if age was not the sole factor; age does not have to be the only reason or even the main reason for the discharge, but it does have to be one of the reasons that made a difference in determining whether or not the plaintiff was to be discharged (SJI2d 105.02).

3. MASTER AND SERVANT — AGE DISCRIMINATION — CIVIL RIGHTS.

A plaintiff in an age discrimination case, whose cause of action arose and was brought under the Fair Employment Practices Act, was not entitled to recover attorney fees under the Civil Rights Act; although the Civil Rights Act, which replaced the Fair Employment Practices Act, provides for recovery of attor-

ney fees, such recovery is limited to civil actions alleging a violation of the Civil Rights Act which are brought under that act (MCL 423.301 *et seq.;* MSA 17.458[1] *et seq.,* repealed and replaced by 1976 PA 453, MCL 37.2101 *et seq.;* MSA 3.548[101] *et seq.*).

Dissenting Opinion by Riley, J.

4. Master and Servant — Civil Rights — Age Discrimination — Reduction of Work Force.

*In a case in which an employee alleges that his termination was the result of age discrimination, the employee must produce some evidence that age was a determining factor in the employer's decision to terminate him to justify submitting the question to the jury; the mere showing of termination, even where replacement of the employee by a younger worker or retention of similarly qualified younger workers is shown, is insufficient (MCL 37.2202[1][a]; MSA 3.548[202][1][a]).*

*Stark & Gordon* (by *Sheldon J. Stark* and *Mark Granzotto*) for the plaintiff.

*Peter J. Lyons* and *Kenneth L. Oliver, Jr.,* for the defendant.

Levin, J. The issue presented is whether the Court of Appeals erred in setting aside a jury verdict on the ground that there was insufficient evidence for a reasonable person to find that age discrimination was a determining factor in the discharge of Edmund Matras. We conclude that there was sufficient evidence for a reasonable person to find that age discrimination was a determining factor, and that the Court of Appeals did err.

Amoco instituted a lay-off plan that classified workers by age, sex, and race to maintain a fixed percentage of workers in each category. The record does not show a need for other than a neutral plan blind to age, sex, and race. During his termination interview, Matras was told by an Amoco manager that he was being discharged because he was low man in the over-forty group. While Amoco con-

tends Matras would have been discharged even if Amoco had not divided its employees into age, sex, and race categories, Amoco presented no evidence indicating how it would have evaluated its employees had it not employed the plan and, consequently, no evidence of what might have been the result under an alternative plan.

The decision of the Court of Appeals is reversed, and the cause is remanded to the Court of Appeals for consideration of the issues raised by Amoco in the Court of Appeals that were not addressed by that Court.

I

Edmund J. Matras brought this age discrimination action under the Fair Employment Practices Act.[1]

Matras was forty-one years old when he was discharged in 1975. He had been working as a territory manager for Amoco since 1963. Evaluations of his performance in his first years were quite favorable. In 1965, he was described as "a very aggressive young man who learns fast and shows great determination." In 1966, he won a sales contest because "for ten months of 1966, your efforts and team leadership have enabled you to come out on top in overall sales ranking." In 1972 and 1973, his performance evaluations took a turn for the worse. On a scale of one to six, with six being the worst, Matras received a six for 1972. This rating by Robert Johnson, Matras' supervisor for the last three months of 1972, was based on Matras' failure to achieve basic gasoline sales objectives for his territory, which had been expanded to include five new stations. Matras had

---

[1] MCL 423.301 *et seq.*; MSA 17.458(1) *et seq.* (repealed and replaced by 1976 PA 453, MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

received an interim rating of two for the first nine months of 1972. His 1973 performance rating was four.

In 1974, Amoco decided to reorganize and reduce its sales force. "Manpower Consolidation Guidelines" were prepared. The guidelines stated that the reorganizations would be conducted at the regional level. Sales personnel in the region would be divided into four categories: women, racial minorities, persons between the ages of forty and sixty-five, and white males under forty.

Only the last two appraisals were used in the Detroit region where Matras was employed. Matras received a score of ten. Four other employees also received a ten, but no one had worse than a ten. Two of the employees with ten were discharged. Two were retained. One of the two who was retained was a white male older than Matras. The other was a black woman, who was not listed in the over-forty category. The trial court concluded she was under forty. Within the Detroit marketing region, the reorganization resulted in the termination of twenty-seven of 160 territory managers. Amoco did not always merely add up the scores within the groups and terminate those with the worst scores. Amoco made exceptions and apparently "skipped around."

During Matras' termination interview, Amoco's district manager told Matras "you're low man in the over age 40 group, so we are going to have to let you go." The making of this statement was not disputed.

At the close of Matras' proofs, Amoco moved for a directed verdict. In denying the motion, the trial court first alluded to the evidence of age discrimination other than the plan. This evidence included the early reference to Matras as an "aggressive

young man," an unwanted party given by Johnson to celebrate Matras' fortieth birthday, his nickname among employees, Gramps, and the appearance of his age on evaluation forms. The trial court said, "if that were the only evidence of age discrimination I would direct a verdict in favor of the defendant." The court went on to say, however, "there is . . . at least a prima facie showing that the plan itself, without reference to any other piece of evidence, is discriminatory on account of age." The plan was a "negative," not "an affirmative action plan." "[I]t takes three protected groups and mandates . . . regardless of how they compare to the unprotected group . . . that some minorities . . . people 40-65 . . . and women will be discharged . . . to maintain their proportion of the whole." Amoco rested, although its motion for a directed verdict had been denied.

The jury found for the plaintiff and awarded him $55,000 for lost wages and $60,000 for other damages. The trial court denied Amoco's motion for judgment notwithstanding the verdict and Matras' motion for attorney fees.

In a split decision, the Court of Appeals reversed, ruling that there was insufficient evidence to go to the jury.

## II

In reviewing a trial court's failure to grant a defendant's motion for a directed verdict or a judgment notwithstanding the verdict, we examine the testimony and all legitimate inferences that may be drawn in the light most favorable to the plaintiff.[2] If reasonable jurors could honestly have reached different conclusions, the motion should

[2] See *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975); *Sparks v Luplow,* 372 Mich 198, 202; 125 NW2d 304 (1963).

have been denied.[3] If reasonable jurors could disagree, neither the trial court nor this Court has the authority to substitute its judgment for that of the jury.

In an age discrimination case, the question thus becomes whether the plaintiff has presented evidence " 'which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that he was discharged because of his age.' "[4]

## A

A jury can find that the discharge was "because of age" even if age was not the sole factor. As accurately expressed in the Michigan Standard Jury Instruction, "[age] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to [discharge] the plaintiff."[5] Another formulation would be that age is a determining factor when the unlawful adverse action would not have occurred without age discrimination. Alternative expressions of the determining factor concept are "but for causation" or "causation in fact."[6]

In the instant case, the question therefore becomes whether there was sufficient evidence, when the evidence and inferences therefrom are viewed in a light most favorable to Matras, for reasonable

---

[3] See *Sparks, supra.*

[4] *LaGrant v Gulf & Western Mfg Co, Inc,* 748 F2d 1087, 1090 (CA 6, 1984).

[5] SJI2d 105.02. See also *Laugesen v Anaconda Co,* 510 F2d 307, 317 (CA 6, 1975), stating: "[T]here could be more than one factor in the decision to discharge him . . . and he [would be] nevertheless entitled to recover if one such factor was his age and if in fact it made a difference in determining whether he was to be retained or discharged."

[6] *Cuddy v Carmen,* 224 US App DC 287, 292, n 23; 694 F2d 853 (1982).

jurors to conclude that age discrimination was a determining factor in the decision to discharge him.

## B

Matras suggests that his cause could also have been submitted to the jury upon satisfaction of the burden of proof requirements articulated in *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). In *McDonnell Douglas,* the United States Supreme Court held that a Title VII complainant can satisfy the initial burden of establishing a prima facie case

> by showing (i) that [plaintiff] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [*Id.,* 802.]

The *McDonnell Douglas* prima facie case approach has been adapted to age discrimination discharge cases by requiring the plaintiff to show "(1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person."[7]

Age discrimination "may of course be proved under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue . . . without resort to any special judicially created presumptions or inferences related to the evidence."[8] "When this kind of direct or circumstantial proof is adduced, there is

[7] *Ackerman v Diamond Shamrock Corp,* 670 F2d 66, 69 (CA 6, 1982).

[8] *Lovelace v Sherwin-Williams Co,* 681 F2d 230, 239 (CA 4, 1982).

no need to employ the *McDonnell Douglas* presumption-based scheme."[9]

The inquiry is basically the same under either approach. The United States Supreme Court in *McDonnell Douglas* stated: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."[10] It would, we believe, be "inappropriate simply to borrow and apply . . . automatically"[11] the *McDonnell Douglas* standards when the "employer is making cutbacks due to economic necessity."[12] Evidence that a competent older employee was terminated, and a younger employee was retained, is insufficient standing alone to establish a prima facie case when the employer reduces his work force because of economic necessity. The rationale behind the *McDonnell Douglas* formula is that its four-part test alone "eliminates the most likely legitimate causes for the employer's adverse action."[13] This formulation is incomplete in the work-force-reduction situation.

To establish a prima facie case of age discrimination when an employer lays off employees for economic reasons, the courts have required the employee to present sufficient evidence on the ultimate question—whether age was a determining factor in the decision to discharge the older protected employee.[14] Accordingly, in the instant case,

---

[9] *Cline v Roadway Express, Inc,* 689 F2d 481, 485 (CA 4, 1982).

[10] *McDonnell Douglas, supra,* 802, n 13.

[11] *Laugesen, supra,* 312.

[12] *Holley v Sanyo Mfg,* 771 F2d 1161, 1166 (CA 8, 1985).

[13] Schlei & Grossman, Employment Discrimination Law (2d ed), 1299; see also *Teamsters v United States,* 431 US 324, 358, n 44; 97 S Ct 1843; 52 L Ed 2d 396 (1977); *Texas Dep't of Community Affairs v Burdine,* 450 US 248; 101 S Ct 1089; 67 L Ed 2d 207 (1981).

[14] See *Holley, supra,* 1166; Schlei, *supra,* 498.

the *McDonnell Douglas* prima facie case approach folds into the traditional directed verdict/judgment notwithstanding the verdict standard.

## III

We turn to a consideration of the evidence in this case.

### A

To establish that age was a determining factor in his discharge, Matras relies on the following evidence in addition to the plan. An earlier evaluation referred to him as "an aggressive young man." He was nicknamed "Gramps" by his co-workers. Also, his sales manager, Robert Johnson, celebrated Matras' fortieth birthday party "despite Mr. Matras' desire not to call attention to this milestone."

We agree with the trial court that this evidence is not alone sufficient. The comment about Matras being an aggressive young man is simply descriptive. None of the persons responsible for Matras' termination called him "Gramps," only his co-workers. The birthday party was just an acknowledgment of Matras' birthday in the course of a celebration of the group's success in a company incentive program. Johnson testified that he regularly recognized his employees' birthdays.

Matras also argues that "age discrimination was designed into the evaluation process." Although the evaluations might not fairly reflect Matras' performance during the years in question,[15] and they clearly stand out in striking contrast to his

---

[15] The downturn in Matras' ratings could be traced directly to the addition of the five new stations. Although it is a point of contention, the objectives assigned to the new stations might not have been realistic. There was conflicting testimony regarding how much say Matras had in setting the objectives.

previous evaluations, there is insufficient evidence
to conclude that the low evaluations were a prod-
uct of age discrimination. The act does not provide
a remedy for unfair treatment unless it was be-
cause of age discrimination.

B

The trial court correctly concluded that "there is
. . . at least a prima facie showing that the plan
itself . . . is discriminatory on account of age" and
that Matras was discharged because of this dis-
criminatory plan.

The manpower-consolidation guidelines called
for sales personnel in each region to be divided
into four categories: women, racial minorities, per-
sons over forty, and white males under forty.
Employees would be "listed in each category for
which protected." White males were not "pro-
tected." Women, racial minorities, and employees
between forty and sixty-five years of age were to
"retain their proportionate share of the jobs."

In the course of denying Amoco's motion for a
directed verdict, the trial court characterized the
plan in the following manner:

This is not an affirmative action plan, this is not
a plan which seeks to give certain protected
groups an advantage. This is . . . a plan to fire
people. And it mandates . . . that certain people
will be fired. And it takes three protected groups
and mandates, regardless . . . of how they com-
pare to the unprotected group, which is the largest
single group in this plan, it mandates that some
minorities will be discharged; that some people 40
to 65 will be discharged . . . and . . . that some
women will be discharged, so long as . . . that is
necessary to maintain their proportion of the
whole.

Under this plan [if] the lowest people in the
ranking—this is hypothetical—if they all fell

within the unprotected group, this plan would
require that in order to maintain this balance, the
percentages, it would require that somebody in the
age group, the minority group and the women
group would be discharged.

\*   \*   \*

So for example, if—this is again hypothetical—
if the plaintiff in this case . . . would have scored
better than all persons in the unprotected group,
but because of some peculiar situation all the older
people were more talented, he, nevertheless, fell at
the bottom of the 40 to 65 group, this plan would
insure that he would be discharged . . . . And
that's why this plan . . . discriminates against
them [the protected groups] to the extent that it
insures they will be discharged in order to main-
tain this balance . . . .

This interpretation of how the manpower consol-
idation guidelines worked is consistent with the
example contained in the guidelines. The example
posited forty-three territory managers and a cut-
back to thirty-five. It was assumed that the forty-
three employees broke down into the following
categories:

| Women | Minorities | 40-65 | Unprotected | Total |
|---|---|---|---|---|
| 3 (6.9%) | 5 (11.6%) | 15 (34.8%) | 20 (46.5%) | 43 (100%) |

If each group were to retain its proportionate
share of the thirty-five remaining jobs, the end
result would be:

| Women | Minorities | 40-65 | Unprotected | Total |
|---|---|---|---|---|
| 2.41 | 4.06 | 12.18 | 16.27 | 35 |

It is also consistent with the explanation given
Matras when he was notified of his termination:

"You're low man in the over age 40 group, so we are going to have to let you go."

On appeal, but apparently not at trial, Amoco contested this characterization of how the plan works. "Contrary to plaintiff's assertions, [the plan] does not mandate that older employees with better performance than younger employees should be reduced, or that the ratio of employees who are not protected should be maintained." During argument in this Court, counsel for Amoco followed up on this point, emphasizing that the burden will fall on the unprotected classes. Nevertheless, neither the plan nor the record suggests this interpretation. Moreover, because of the procedural posture of the instant case, we need not choose between the two interpretations: "Once it is determined that reasonable persons may differ as to whether a fact has been proved [and we believe reasonable persons could disagree in the instant case], the probative value of the evidence, and the conclusions to be drawn from it, lies in the hands of the jury."[16] Once again, we emphasize that, on a motion for a directed verdict, we review the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the plaintiff.[17]

## C

Although the trial court's reasons for distinguishing the mechanics of the classification plan in the instant case from traditional affirmative action plans are adequate, further elaboration may provide a better understanding of why Amoco's plan violated the statutory prohibition against age discrimination. Amoco contends that the purpose of the plan was to assure that the three groups it set

---

[16] Prosser & Keeton, Torts (5th ed), p 236.

[17] See *Caldwell,* n 2 *supra,* 407.

aside for special treatment—women, racial minorities, and persons between the ages of 40-65—were not adversely affected.[18] There is, however, no indication that a neutral consolidation plan that did not classify by sex, age, or racial status would have had an adverse effect on the three groups. The record does not indicate that the three groups needed special treatment.

As the trial court indicated, there is also no indication that the manpower consolidation guidelines granted the kind of preferential treatment based on group status that has been allowed. In *Gill v Union Carbide Corp*,[19] which Amoco relies on as support for the proposition that group treatment does not run afoul of the Age Discrimination in Employment Act, age was "a consideration used only for the benefit of an employee and in no way could such be used to adversely affect those considered for termination."[20] Age was not a plus factor in the instant case.

A classification can be purely beneficial to a particular group in terms of increasing the group's job security when *at least* a certain percentage is

[18] On appeal to this Court, Amoco argues that because of its then-existing obligations as an employer covered by federal equal employment opportunity laws and as a federal contractor bound by the Office of Federal Contract Compliance Regulations (OFCCR), Amoco sought to minimize any adverse effect of the work-force reduction on protected minorities. Amoco contends that to accomplish this goal, the plan therefore sorted employees according to their federally protected classes of race, sex and "over 40."

To the extent that Amoco argues that its plan was mandated by the OFCCR, we note the following: (1) defendant conceded during oral argument before this Court that the OFCCR did not require the particular plan implemented here; (2) the OFCCR were not set forth as a defense or justification of the plan at trial; and (3) defendant did not provide a copy of the pertinent regulations to this Court.

Accordingly, we do not address in this case a work-force-reduction plan which has been established to have been implemented pursuant to the affirmative action policies of a federal or state agency.

[19] 368 F Supp 364 (ED Tenn, 1973).

[20] *Id.*, 368.

reserved for the group.[21] The "at least" formulation creates a floor and not a ceiling. When a floor is created, certain employees within the group who might otherwise have been discharged will be retained. The evidence, viewed in the light most favorable to Matras, indicates that a floor was not created.

What was created was a fixed percentage. This did not provide more protection for the employees within the three groups set aside for special treatment by the employer; instead, it gave each group either less or more protection, depending on how one group compared to the other groups. It assured that if the members of one of the employer's "protected" groups immediately above the cutoff line scored worse than employees being discharged in other groups, then some employees within that protected group who would otherwise have been discharged would be retained because of their age, sex, or race; while if the members of that group immediately below the cutoff line scored better than employees being retained in other groups, then some employees in the "protected" group who deserved to be retained would be discharged because of their age, sex, or race.

What the plan ultimately required was unequal treatment because of age, sex, or race to maintain percentages of age, sex, and race. While the United States Supreme Court has approved in the hiring context a "temporary" affirmative action plan "not intended to maintain racial balance, but simply to eliminate a manifest racial imbalance," the instant case is clearly distinguishable.[22] As the trial court noted, this was a plan "to fire people."

---

[21] See *Fullilove v Klutznick*, 448 US 448; 100 S Ct 2758; 65 L Ed 2d 902 (1980).

[22] *United Steelworkers of America v Weber*, 443 US 193, 208; 99 S Ct 2721; 61 L Ed 2d 480 (1979).

Its sole purpose was to maintain an age, sex, and racial balance. The record does not indicate a need for a lay-off plan that was not a neutral evaluation plan blind to race, sex, and age.

## D

Matras cannot recover by showing that Amoco discriminated on account of age unless the discrimination was a determining factor in the adverse action taken against him. If the discharge of Matras would have taken place without regard to age discrimination, age was not a determining factor in his discharge.

What Amoco would have done with Matras had it not developed its discriminatory plan is far more difficult to determine than what it actually did. It is undisputed that Amoco divided its employees by age, sex, and race, and that Matras was told he was discharged because he was "low man in the over age 40 group." To determine what Amoco would have done had it not decided to stratify its work force into categories involves a comparison of "what did occur with what would have occurred if hypothetical, contrary-to-fact conditions had existed."[23] This "comparison between factual and contrary-to-fact conditions is implicit in the classic formulation that a cause is a necessary antecedent. . . . The term 'cause in fact' embraces all things which have so far contributed to the result that without them it would not have occurred." *Id.* This inquiry is distinctly the province of the jury unless there is insufficient evidence for a reasonable person to find as the jury ultimately did.

After reviewing all the evidence and inferences therefrom in the light most favorable to Matras,

---

[23] Prosser, n 16 *supra,* 265.

we conclude that a reasonable person could have concluded that the discriminatory plan was a determining factor in Matras' discharge. We are especially reluctant to conclude that a reasonable person could not have found that age was a determining factor on the basis of a "hypothetical contrary to fact condition"—what would have happened had the employer not discriminatorily divided its work force. This is particularly true in the instant case, because Amoco presented no evidence to suggest how it would have reduced its work force had it not employed the discriminatory plan. Amoco was the party in the best position to show what would or would not have happened had the discriminatory plan not been employed. In circumstances such as these, the burden of producing evidence has been placed on the party in the best position to provide the necessary information.[24] Thus, even if we were not obligated to view the evidence and the inferences that could be drawn therefrom in the light most favorable to Matras, we could not accept Amoco's hypothesis.

Amoco contends that Matras would have been discharged regardless of the discriminatory plan because he had received a score of ten. Amoco suggests that his score was so poor that he would not have been retained regardless of the classifica-

---

[24] See *Teamsters v United States,* n 13 *supra,* 359, n 45, where the United States Supreme Court said:

"Although the prima facie case did not conclusively demonstrate that all of the employer's decisions were part of the proved discriminatory pattern and practice, it did create a greater likelihood that any single decision was a component of the overall pattern. Moreover, the finding of a pattern or practice changed the position of the employer to that of a proved wrongdoer. Finally, the employer was in the best position to show why any individual employee was denied an employment opportunity. Insofar as the reasons related to available vacancies or the employer's evaluation of the applicant's qualifications, the company's records were the most relevant items of proof. If the refusal to hire was based on other factors, the employer and its agents knew best what those factors were and the extent to which they influenced the decisionmaking process."

tions by age, sex, and race. Even if a score of ten meant any employee in any group would be automatically discharged, and that was not true in the instant case, there is no evidence to suggest that Amoco would have relied on the two-year evaluations if the discriminatory plan had not been employed. The plan itself called for a focus on the evaluations. If the need for preserving the balance of the age, sex, and race of the work force had been removed, more individualization might have been allowed. In the past, work-force reductions had been characterized by more in-depth examinations of the employees. The need to preserve the fixed percentages diminished the flexibility of the evaluation process. A more flexible approach might have included an examination of Matras' entire record and his criticisms of his recent evaluations, and might have led to a different result.

Even if one looks only at the two-year evaluations, it is by no means clear that they would have led to Matras' discharge had all the employees been lumped together. Twenty-seven employees were eventually terminated.[25] Although four other employees received a score of ten, no one received a worse score. These four were not, however, all terminated. Two were retained, and two were dismissed. The trial court noted that one of those retained was a black woman under forty and the other person retained was a white man over forty. The black woman was protected because of the plan. An exception was made to protect the white man because of his nineteen years of service. This was not the only example of an employee who was dismissed in order to retain an employee in the

[25] Matras' counsel stated that there was "no evidence [in the record] that 27 had to be cut," and we agree. While there was evidence of a need for a reduction, no specific numbers were introduced into evidence.

same group with the same or lower score. There was some evidence in the record that Amoco "skipped around" within the groups. The basis of the exceptions was not clear.

The possible negative consequences of group status become clearer upon examination of Amoco's explanation for the exception made for the white man in the over-forty group who had a ten. "Mr. Stritzinger, like Mr. Matras, had a 10, however Mr. Stritzinger had 19 years of service." Stritzinger was retained although employees with the same and better evaluations were discharged. Another employee with twenty-four years experience was retained over an employee with less seniority but higher evaluations. Matras' eleven years did not carry much weight in the over-forty group, but it might have if the work force was lumped together.

In sum, the Court of Appeals erred when it set aside the verdict in favor of Matras. It substituted its judgment for that of the jury although there was sufficient evidence for a reasonable person to conclude that age was a determining factor in the decision to discharge Matras. Amoco discriminatorily divided its employees into groups, and Amoco said Matras was discharged because he was low man in the over-forty group. Amoco did not present evidence of what it would have done had it not so discriminatorily divided its work force. Amoco merely hypothesized what would have happened. A reasonable person could therefore have found that age was a determining factor in the discharge.

IV

Matras seeks to recover attorney fees under the

provision of the Civil Rights Act.[26] Although the Court of Appeals had ruled against Matras on the merits, it went on to rule that attorney fees are not recoverable because Matras' claim was brought under the FEPA and not the Civil Rights Act.[27]

Attorney fees ordinarily are not recoverable at common law, but may be recoverable where a statute specifically so provides.[28] The FEPA did not so provide, and no claim is made that attorney fees are recoverable by a person who was awarded damages for a violation of the FEPA.

Matras claims that the pertinent substantive provisions of the FEPA are codified and continued in the Civil Rights Act and that the provision for attorney fees in the Civil Rights Act should be viewed as a procedural amendment of the codified enactment. It is argued that the rule of construction stated in some cases by this Court that a procedural amendment is retroactive should be applied in the instant case.[29]

---

[26] MCL 37.2801; MSA 3.548(801).

[27] The cause, however, was submitted to the jury only on the FEPA count because the substantive right arose out of an act of discrimination that occurred before the effective date of the Civil Rights Act. Indeed, the complaint was filed before the Civil Rights Act was enacted and the civil rights count had been added by amendment.

The Court of Appeals has consistently held that the Civil Rights Act does not provide for payment of attorney fees for actions brought under the FEPA for alleged violations before the enactment of the Civil Rights Act. See *Dep't of Civil Rights ex rel Cornell v Edward W Sparrow Hospital Ass'n,* 119 Mich App 387, 392; 326 NW2d 519 (1982), *rev'd on other grounds* 423 Mich 548 (1985), and *Adama v Doehler-Jarvis,* 144 Mich App 764; 376 NW2d 406 (1985). In *Sparrow,* on further appeal to this Court, the majority concluded that there was no need to address the question, because it had not been properly preserved. *Sparrow, supra,* 575-576.

[28] See *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 74; 212 NW2d 821 (1973); 20 Am Jur 2d, Costs, § 72, pp 58-59.

[29] See, *e.g., Kalamazoo Ed Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 601; 281 NW2d 454 (1979); *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969); *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 487; 124 NW2d 286 (1963).

In construing a statute, a court seeks to implement the intent of the Legislature. The ultimate question is whether the Legislature intended that the amendments of the Civil Rights Act providing a judicial remedy for a violation of that act and for the award of reasonable attorney fees to successful claimants apply to causes of action which arose under the FEPA.

In *Holmes v Haughton Elevator Co,* 404 Mich 36; 272 NW2d 550 (1978), this Court considered whether an action for age discrimination violative of the FEPA could be commenced in the circuit court without regard to whether a timely complaint had been filed with the Civil Rights Commission. The Court found that such a civil action could be commenced but did so not on the basis of the Civil Rights Act, but rather by extending this Court's earlier decision in *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971), which held that such an action could be commenced for racial discrimination. A concurring justice would have found that there was such a judicial remedy on the basis of both the extension of *Pompey* and by reading the Civil Rights Act to provide a direct cause of action for age discrimination that occurred before the effective date of that act.[30]

We are of the opinion that the direct cause of action and attorney fees remedial provisions added by the Civil Rights Act, as well as the substantive provisions of that act concerning age discrimination in employment, apply only to causes of action arising on and after the effective date of that act. The Civil Rights Act did not merely codify preexisting statutes and procedural remedies. It worked

---

[30] The concurring justice cited *Schroeder v Dayton-Hudson Corp,* 448 F Supp 910 (ED Mich, 1977), *rev'd in part on reh* 456 F Supp 650 (ED Mich, 1978).

an extensive expansion of the preexisting substantive provisions of civil rights legislation. In that context we have no basis for ascribing to the Legislature, in providing that

(i) "A person alleging a violation of *this* act may bring a civil action," and

(ii) Damages may be avoided for "each violation of *this* act" including reasonable attorney fees,[31] and

(iii) "A court, in rendering a judgment in an action brought pursuant to *this* article, may award reasonable attorney fees" and other costs of litigation (emphasis added),[32]

an intent to provide for recovery of attorney fees in an action brought to enforce a substantive right that arose under a statute repealed by "this act."

Matras' substantive right not to be discriminated against in employment because of age arose under the FEPA, and not under "this act," the Civil Rights Act. But for the FEPA, Matras would have no cause of action against Amoco.[33]

Matras may not recover attorney fees because his cause of action did not arise under the Civil Rights Act, and that act provides for recovery of attorney fees only in a civil action alleging a violation of that act ("this act") brought under the "article" of the Civil Rights Act providing for such a civil action.

V

The decision of the Court of Appeals is reversed,

---

[31] MCL 37.2801; MSA 3.548(801).

[32] MCL 37.2802; MSA 3.548(802).

[33] The Civil Rights Act repeals the FEPA. MCL 37.2804; MSA 3.548(804). Such repeal did not release Amoco from the liability incurred under that act which is treated as remaining in force for the purpose of instituting or sustaining an action for enforcement of liability arising under that act. MCL 8.4a; MSA 2.214.

and the cause is remanded to the Court of Appeals for consideration of the issues raised by Amoco in the Court of Appeals that were not addressed by that Court.

Reversed and remanded to the Court of Appeals.

WILLIAMS, C.J., and BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with LEVIN, J.

RILEY, J. I respectfully dissent.

The primary issue in this age discrimination case is whether the Court of Appeals erred in setting aside the jury verdict in favor of plaintiff. I would affirm the decision of the Court of Appeals, thus rendering moot plaintiff's motion for attorney fees.

## FACTS AND PROCEDURAL HISTORY

Plaintiff brought this action under the Fair Employment Practices Act (FEPA), MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.,*[1] alleging that his termination from employment with defendant was the result of age discrimination. Defendant admits that plaintiff, then forty-one years old, was terminated as part of a nationwide reduction in its work force, but contends that plaintiff was terminated solely because of his poor job evaluations.

Plaintiff was employed by defendant from October, 1963, to January 5, 1975, as a territory manager. His duties included selling to, maintaining

---

[1] The FEPA was subsequently repealed and its substantive provisions reenacted in the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.* The act now provides in relevant part:

"(1) An employer shall not:

"(a) Fail or refuse to hire, or recruit, or discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a); MSA 3.548(202)(1)(a).

relations with, and providing service to dealer-operated Amoco service stations within the territory.

Testimony established that territory managers received annual performance evaluations. In the first years, plaintiff was evaluated favorably. The written evaluations for 1965 and 1966 describe plaintiff as an "aggressive young man."

For the first nine months of 1972, plaintiff's performance rating was a "two" on a scale of one to six, with one being the best. This interim appraisal form was completed by plaintiff's sales manager who was being transferred. Robert Johnson became plaintiff's sales manager. In March of 1973, Johnson evaluated plaintiff's overall 1972 performance at "six," on the basis of plaintiff's failure to achieve the "basic"[2] gasoline objective. The appraisal form also contained Johnson's comments that plaintiff "[d]oes not act on difficult situations," "[d]oes not read instructions" and is lacking "in overall administrative duties." Plaintiff's 1973 performance was rated "four."

In 1974, defendant determined to reorganize and reduce its sales force. It was decided that twenty-seven employees would have to be cut from the 160-member group of which plaintiff was a member. To effectuate this goal, defendant prepared "Manpower Consolidation Guidelines" (the plan). The plan contains the following statements:

> Age and length of time to retirement are not to be used as criteria in the selection process; however, consideration will be given to terminating those employees with long service who indicate a desire for severance. Those who request severance on a voluntary basis must do so in writing.

[2] The "basic" objective for an item (here, gasoline) was defined as that level of sales which would be achieved if there were no Amoco salesperson assigned to the territory.

The ratio of employees protected by nondiscrimination laws should be maintained.

\*   \*   \*

The principal concept to be applied is as follows: within any given competing work group, employees protected by law, i.e., the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967, should retain their proportionate share of the jobs in that group which they held prior to the reorganization.

The 160 employees were divided into four categories—women, minorities, age forty to sixty-five, and unprotected. Within each of the categories, employees were ranked by performance. The overall rating was obtained by adding the scores of each employee's last three[3] appraisals. Ties were broken according to numbers of years of employment. It was undisputed that only the last two appraisals were used in ranking the 160 employees in the group involved. Thus, plaintiff's rating was "ten."

Along with plaintiff, four other employees received an overall rating of "ten." Two were younger than plaintiff and were terminated. A third, a black female, and the only female in the affected work group, was retained. Her age was not established. The fourth employee, who was older than plaintiff, was retained for reasons not in evidence.[4]

Plaintiff, the oldest territory manager in Johnson's group of five, was the only one of those five terminated. Plaintiff testified that his nickname in the group was "Gramps." Further, he testified that Johnson drew unwanted attention to his fortieth birthday.

---

[3] The plan also provided that "[i]f in any particular group there are a substantial number of employees with only two appraisals, two appraisals for all may be utilized."

[4] This employee did have more years in service than plaintiff.

Plaintiff was informed of his termination on November 4, 1974, at a meeting attended by Johnson and Paul T. McClarnon, defendant's district manager. McClarnon told plaintiff, "you're low man in the over 40 group, so we are going to have to let you go."

Plaintiff testified that he was replaced by a younger man, although he did not know the man's age. Johnson testified that soon after plaintiff's termination, the territory was expanded.

The case was tried by a jury. At the close of plaintiff's case, defendant moved for a directed verdict, but, following lengthy arguments, the trial court denied the motion. Judgment on the jury verdict was entered in the amount of $55,000 for lost wages and $60,000 for all other damages. Thereafter, defendant's motion for judgment notwithstanding the verdict and plaintiff's motion for attorney fees were denied. These decisions were appealed.

In a split decision, the Court of Appeals reversed the jury verdict, concluding that the trial judge erred in failing to grant defendant's motion for judgment notwithstanding the verdict. *Matras v Amoco Oil Co,* unpublished opinion per curiam, decided December 7, 1983 (Docket No. 62393). As to plaintiff's cross-appeal, the Court upheld the trial court's denial of plaintiff's motion requesting attorney fees. We granted plaintiff's application for leave to appeal on April 5, 1985. 422 Mich 857 (1985).

## AGE DISCRIMINATION CLAIM

The dispositive issue is the propriety of granting judgment notwithstanding the verdict for the employer-defendant in this age discrimination case. Since this Court has not previously addressed the

subject, it is necessary to first discuss the substantive elements of and method of proving an age discrimination claim before applying the appropriate standards to the particular evidence introduced at the trial.

A

Plaintiff instituted this action under the FEPA, which provided in pertinent part:

Sec. 3a. It is an unfair employment practice:
(a) For any employer, because any individual is between the ages of 18 and 60, or because of the sex of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment. [MCL 423.303a; MSA 17.458(3a).]

Several panels of the Court of Appeals have dealt with the question of what the plaintiff must ultimately show to prevail in an age discrimination suit. In *Gallaway v Chrysler Corp,* 105 Mich App 1, 6; 306 NW2d 368 (1981), *lv den* 413 Mich 853 (1982), the Court held that jury instructions should convey the principle that discrimination exists if "age . . . played a significant role" in the employer's decision.

The *Gallaway* Court relied on the Sixth Circuit's decision in *Laugesen v Anaconda Co,* 510 F2d 307 (CA 6, 1975), which involved a suit under the Age Discrimination in Employment Act (ADEA), 29 USC 621 *et seq.* The *Laugesen* court concluded that a plaintiff need not prove that age discrimination was the only factor in the termination of employment:

While the instructions make it manifestly clear that the jury should find for the defendant if termination "is for bona fide business or economic

reasons in which age is not a factor," the converse is not stated. Rather the instructions concerning the right of plaintiff to recover state that it is unlawful to discharge an individual "merely because of his age," and that he has the burden of showing by a preponderance of the evidence "that he was discharged from his job because of his age" without making it clear that it need not have been the sole or exclusive cause.

However expressed, we believe it was essential for the jury to understand from the instructions that there could be more than one factor in the decision to discharge him and that he was nevertheless entitled to recover if one such factor was his age and if in fact it made a difference in determining whether he was to be retained or discharged. This is so even though the need to reduce the employee force generally was also a strong, and perhaps even more compelling reason. It is because the instructions did not convey this necessary concept of the law to the jury that we are compelled to reverse and remand for a new trial. [*Laugesen,* p 317.]

Similarly, in *Adama v Doehler-Jarvis,* 115 Mich App 82, 90; 320 NW2d 298 (1982), *rev'd on other grounds* 419 Mich 905 (1984), the Court, while phrasing the test somewhat differently, (age must have been "a major determinative factor, one that made a 'significant' difference in the decision") relied on what it termed the "*Laugesen-Gallaway* 'determining factor' standard."

Finally, in *Bouwman v Chrysler Corp,* 114 Mich App 670, 680; 319 NW2d 621 (1982), *lv den* 417 Mich 989 (1983), the Court articulated that the plaintiff must establish "that age was a determining factor in plaintiff's being laid off," noting that its decision was consistent with *Gallaway.*

In suits brought under the ADEA, the federal circuit courts have basically agreed that a plaintiff must prove that age was "a determining factor" in

the challenged employment decision. See, e.g., *Loeb v Textron, Inc,* 600 F2d 1003, 1019 (CA 1, 1979); *Bentley v Stromberg-Carlson Corp,* 638 F2d 9, 12 (CA 2, 1981); *Maxfield v Sinclair Int'l,* 766 F2d 788 (CA 3, 1985); *Lovelace v Sherwin-Williams Co,* 681 F2d 230, 238 (CA 4, 1982); *Marshall v Airpax Electronics, Inc,* 595 F2d 1043, 1044 (CA 5, 1979); *Blackwell v Sun Electric Corp,* 696 F2d 1176, 1181 (CA 6, 1983); *Kephart v Institute of Gas Technology,* 630 F2d 1217, 1222 (CA 7, 1980), cert den 450 US 959 (1981); *Holley v Sanyo Mfg, Inc,* 771 F2d 1161, 1164 (CA 8, 1985); *Kelly v American Standard, Inc,* 640 F2d 974, 984 (CA 9, 1981); *Perrell v Financeamerica Corp,* 726 F2d 654, 656 (CA 10, 1984); *Anderson v Savage Laboratories, Inc,* 675 F2d 1221, 1224 (CA 11, 1982); *Cuddy v Carmen,* 224 US App DC 287, 291; 694 F2d 853 (1982).[5]

## B

While the federal courts basically agree on what must ultimately be shown in an age discrimination case, much disagreement exists concerning how it is to be shown. This confusion is understandable, considering the inherent difficulties in proving motive, the innumerable forms of discrimination,

[5] I recognize that some of these courts have expressed the concept in different terms, e.g., determining factor means that, but for the employer's motive to discriminate because of age, the plaintiff would not have been discharged. See, e.g., *Loeb, supra,* 1019. I am persuaded that there is no real difference between the tests. In *Cuddy, supra,* n 23, the court reasoned:

"Though the courts vary their reformulations slightly, we can discern no immediate logical difference between them. The notion of 'but for' causation—or causation-in-fact—is a basic, threshold issue of plaintiff's action; an act is typically not regarded as a 'but for' cause of an event if the event would have occurred without it. See Prosser, Law of Torts 236-241 (4th ed). Thus, the 'but for' reformulation is no more than the traditional factual inquiry into whether consideration of the impermissible criterion made a difference toward causing the adverse action to occur."

and the varying factual situations involved. With regard to this last consideration, it is important to bear in mind throughout this discussion that the factual situation of the instant case is that plaintiff was discharged during defendant's reduction of its work force.

The particular procedural context of this case requires us to determine whether the evidence created a jury question on the ultimate issue whether age was a determining factor in his discharge. That is, did plaintiff prove a prima facie[6] case of discrimination?

In examining the proper method of proving a case in suits arising under the ADEA, some courts have adopted the order and allocation of proof set by the United States Supreme Court in *McDonnell Douglas Corp v Green,* 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973), a case involving alleged race discrimination in hiring brought under Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq.* In *McDonnell Douglas,* p 802, the Court held that one way for a plaintiff to establish a prima facie[7] case is to show: (1) that the plaintiff belonged to a racial minority, (2) that he applied and was qualified for a job for which the employer was seeking applicants, (3) that, despite his qualifications, he was rejected, and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of the plaintiff's qualifications. The effect of the "prima facie case" is that of a rebuttable factual

---

[6] I use "prima facie" here to denote the quantum of evidence necessary to support submission of the case to the jury.

[7] Use of the term "prima facie" in this context denotes the plaintiff's "original production burden on the motivational question . . . [i.e., to produce] evidence whose . . . probative force . . . would suffice . . . to support as a reasonable probability the inference" of discrimination. *Lovelace, supra,* p 242.

inference, or presumption.[8] See also *Texas Dep't of Community Affairs v Burdine,* 450 US 248, 254-255, ns 7, 8; 101 S Ct 1089; 67 L Ed 2d 207 (1981). The burden of producing evidence then shifts to the defendant to come forward with evidence that the decision was for a legitimate, nondiscriminatory reason. *McDonnell Douglas,* p 802. If this burden is carried, the motivational issue is then cast at "a new level of specificity." *Burdine,* p 255. Finally, the plaintiff once again has the burden of going forward with the evidence, this time to counter the defendant's evidence of the reason for the action with evidence that the reason given is "pretextual." *McDonnell Douglas,* p 804; *Burdine,* p 256.

As adapted to age discrimination cases, a prima facie case might be established if the plaintiff shows that

> 1) he was a member of the protected class, [*i.e.,* between 40 and 70]; 2) he was discharged; 3) he was qualified for the position; and 4) he was replaced by a younger person. [*Ackerman v Diamond Shamrock Corp,* 670 F2d 66, 69 (CA 6, 1982).][9]

[8] The Court explained the logic of the prima facie case in *Furnco Construction Corp v Waters,* 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978):

"A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. See *Teamsters v United States, supra* [431 US 324, 358, n 44; 97 S Ct 1843; 52 L Ed 2d 396 (1977)]. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race."

[9] Regarding the first factor, it should be noted that while the ADEA is aimed at protecting older workers, the FEPA protected persons between the ages of eighteen and sixty.

The *McDonnell Douglas* Court itself, however, noted that its test was not intended to be the *only* prima facie evidence test for discrimination:

The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations. [*McDonnell Douglas,* p 802.]

Regarding the applicability of *McDonnell Douglas* in age discrimination suits, the *Laugesen* court observed:

While it may not be unreasonable to assume that in a proper case the guidelines established in *McDonnell Douglas v Green* can be applied in age discrimination jury cases, we believe it would be inappropriate simply to borrow and apply them automatically. [*Laugesen, supra,* p 312.]

The court reasoned that employment decisions involving age may reflect the result of the universal process of aging:

The progression of age is a universal human process. In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex and national origin. Thus, while the principal thrust of the Age Act is to protect the older worker from victimization by arbitrary classification on account of age, we do not believe that Congress intended automatic presumptions to apply whenever a worker is replaced by another of a different age. [*Laugesen,* p 313, n 4.]

Noting that the ADEA was not designed to inhibit the employer's right to make legitimate business decisions, the *Laugesen* court opted for a case-by-case approach.

I am persuaded that it would be improper to strictly apply the *McDonnell Douglas* guidelines in age discrimination cases involving a reduction in the work force. The fourth factor, replacement by a younger employee, is particularly of doubtful significance. If that element is required, the suit of a worthy claimant might be barred, as not all persons terminated would be able to prove that they were replaced, because of the very nature of a personnel reduction. On the other hand, allowing a cause of action any time a worker can show replacement by a younger person ignores the realities of the workplace noted in *Laugesen,* i.e., that older workers will, more often than not, be replaced by younger persons. See *Ackerman, supra,* p 70; *Sahadi v Reynolds Chemical,* 636 F2d 1116, 1118 (CA 6, 1980). The same cannot be said of race or sex. Further, "age is not a discrete and immutable characteristic such as sex or race, but rather is a continuum." *McCorstin v United States Steel Corp,* 621 F2d 749, 753 (CA 5, 1980). I believe that it would be absurd to hold that a cause of action for age discrimination automatically exists when, e.g., a sixty-year-old is replaced by a fifty-nine-year-old.[10]

Recognizing the inadequacies of *McDonnell Douglas* in age discrimination suits which involve a reduction in force, some federal courts have held that some additional showing is necessary to make a prima facie case. See, e.g., *LaGrant v Gulf & Western Mfg Co, Inc,* 748 F2d 1087, 1091 (CA 6, 1984) ("[t]he plaintiff in such reorganization cases

---

[10] This is not to say that evidence of age differential is not relevant.

must come forward with additional . . . evidence that age was a factor in his termination"); *Baldwin v Sears, Roebuck & Co,* 667 F2d 458, 462 (CA 5, 1982) ("he must produce evidence . . . that the employer intended to discriminate in reaching the decision"); *EEOC v Western Electric Co, Inc,* 713 F2d 1011, 1015 (CA 4, 1983) ("some other evidence that the employer did not treat age neutrally"); *Holley, supra,* pp 1165-1166 (following *LaGrant, supra*).

I read the *Bouwman* Court's test, on which the Court of Appeals in the instant case purportedly relied, as consistent with the just-noted principles. The *Bouwman* Court concluded that the plaintiff must establish: (1) that she was in the affected class, (2) that she had skills, experience, background, or qualifications comparable to other employees who were not laid off, and (3) that age was a determining factor in her being laid off. *Bouwman,* p 680. Noting that the plaintiff's layoff occurred as part of a personnel cutback, the Court wrote:

> [A] prima facie case of age discrimination is not shown by mere termination of a competent employee where it is shown that an employer is making cutbacks due to economic necessity. *Sahadi, supra,* 1118.

I read *Bouwman* as having used, in effect, a modified version of the fourth *McDonnell Douglas* factor. That is, the plaintiff was required to establish "that [she] had . . . qualifications comparable to other employees who were not laid off . . . ." Additionally, the plaintiff was required to establish that "age was a determining factor in [her] being laid off." The inclusion of this requirement, I believe, necessitated the showing of some addi-

tional evidence of discrimination beyond mere layoff.

I am persuaded that, in a reduction of workforce case, the plaintiff must produce some evidence on the ultimate question—whether age was a determining factor in the employer's decision—to justify submitting the case to the jury.[11] This showing may be made with direct or circumstantial evidence. However, the mere showing of termination, even if the plaintiff proves replacement by a younger person or that younger, similarly qualified employees were retained, will not suffice. To say that an inference of discrimination arises out of such showing would be to ignore the fact that in a reduction of force situation some employees will inevitably be terminated. It could also attach un-

[11] *E.g., Blackwell v Sun Electric Corp,* 696 F2d 1176, 1181 (CA 6, 1983) (testimony as to why employer refused to expand territory for the plaintiff, and yet did so for younger replacement; testimony that manager said he could always find a reason for firing someone; evidence that young supervisor "buddied with" younger employees; and testimony regarding reasons for discharge of other older salesmen combined to raise inference of discrimination); *Rose v Nat'l Cash Register Corp,* 703 F2d 225, 227 (CA 6, 1983), *cert den* 464 US 939 (1983) (Plaintiff and two former employees testified that "company wanted to promote a new 'younger image' while simultaneously reducing its work force." Further, plaintiff "testified that a superior at NCR informed him that NCR held no future for a man of [plaintiff's] age."); *Williams v General Motors Corp,* 656 F2d 120, 130 (CA 5, 1981), *cert den* 455 US 943 (1982) ("a paper scrap with the notation 'Lay-off—Too Old' beside a plaintiff's name, would of course suffice"); *Hedrick v Hercules, Inc,* 658 F2d 1088, 1094 (CA 5, 1981) (testimony "that the company was going to get rid of the 'good 'ole Joes' "; "evidence that shortly before Hercules formulated its reorganization plan the company conducted a survey which revealed that in comparison with six other major chemical companies, Hercules had the highest average employee age"); *Laugesen, supra,* p 313 (comment on Laugesen's Separation Notice " 'too many years on the job,' [while ambiguous], could have meant that the length of service itself, a factor inevitably related to age, was the basis for discharge regardless of performance"); *Stanojev v Ebasco Services, Inc,* 643 F2d 914, 921 (CA 2, 1981) ("Through statistical evidence, it may be possible to demonstrate a pattern of failure to hire or promote older persons, or an apparent policy of forced early retirement for older employees. See generally *Teamsters v United States,* 431 US at 337-40, 97 S Ct 1855-56.")

due significance to the fact of even a slight age differential. I would decline to set down a rigid test, or to enumerate distinct elements, preferring instead to focus on the bottom-line requirement of what a plaintiff must establish in *any* age discrimination case—i.e., that age was a determining factor in the termination.

C

In reviewing a motion for judgment notwithstanding the verdict, an appellate court must view all the evidence and testimony, and legitimate inferences therefrom, in a light most favorable to the nonmoving party. *Caldwell v Fox*, 394 Mich 401, 407; 231 NW2d 46 (1975). Upon such review, if reasonable minds could honestly reach different conclusions, the motion is properly denied. *Sparks v Luplow*, 372 Mich 198; 125 NW2d 304 (1963). Though "appellate courts [must] exercise considerable restraint in overruling jury determinations, [we cannot] ignore our responsibility to insure that the quantum and sufficiency of direct and circumstantial evidence presented at trial permits juries to draw reasonable inferences which would support such determination." *Kupkowski v Avis Ford, Inc,* 395 Mich 155, 168; 235 NW2d 324 (1975). Having reviewed the record with these principles in mind, I agree with the Court of Appeals that "reasonable [minds] could not conclude that age was a determining factor in the decision to discharge plaintiff."

Plaintiff argues that he proved age discrimination in three ways. First, he relies on the evidence of the plan. He correctly notes that employees were classified into groups, one of which consisted of employees between the ages of forty and sixty-five. Since the plan provided that "[t]he ratio of employees protected by [federal] nondiscrimination laws should be maintained," it "*required* that

there be a reduction in the over 40 group."[12]

[12] This caused the trial judge great concern, and was the basis for his denial of defendant's motion for directed verdict:

"*The Court:* Okay. Well, I have a hard time perceiving a prima facie case without predicting what the result would be, with merely such evidentiary factors as to a reference to a finding that they gave him a birthday party and they put his age down on a form.

"If that—I think I can say if that's all there was in this case, we—if that were the only evidence of age discrimination I would direct a verdict in favor of the defendant.

"I believe that there is no question, on the other hand, that there is a—at least a prima facie showing that the plan itself, without reference to any other piece of evidence, is discriminatory on account of age.

"What this plan does is insure that some person in the protected group will be discharged. It insures that.

"This is not an affirmative action plan, this is not a plan which seeks to give certain protected groups an advantage. This is this is [*sic*] a plan to fire people. And it mandates—it absolutely mandates that certain people will be fired. And it takes three protected groups and mandates, regardless—if you follow this plan—regardless of how they compare to the unprotected group, which is the largest single group in this plan, it mandates that some minorities will be discharged; that some people 40 to 65 will be discharged, and mandates that some women will be discharged, so long as—so long as that is necessary to maintain their proportion of the whole.

"Under this plan what could happen is that on that—applying a ranking to all in the group and the lowest people in the ranking—this is hypothetical—if they all fell within the unprotected group, this plan would require that in order to maintain this balance, the percentages, it would require that somebody in the age group, the minority group and the women group would be discharged.

"This is a negative action plan. As far as I can tell, this doesn't—this doesn't protect under the—notwithstanding that the plan says that we are going to keep—or implies that it will protect people in certain age groups. What it really does, regardless of relative merit to the unprotected group, it mandates that they will be discharged.

"So, for example, if—this is again hypothetical—if the plaintiff in this case had been on a merit system applied to all the employees, would have scored better than all persons in the unprotected group, but because of some peculiar situation all the older people were more talented, he, nevertheless, fell at the bottom of the 40 to 65 group, this plan would insure that he would be discharged, notwithstanding that he obtained a better score than every person in the unprotected group. And that's why this plan, in the court's judgment, prima facie shows rather than protect women, minorities and people 40 to 65, it discriminates against them to the extent that it insures they will be discharged in order to maintain this balance between women, minorities and the unprotected group.

"Now, I don't know why in a plan to fire people the unprotected group has to be protected."

(Emphasis in original.) It was undisputed that he was told that "you're low man in the over age 40 group, so we are going to have to let you go."

It is crucial to remember that plaintiff's termination occurred as part of a reduction in defendant's work force. Regrettable as it is, in such a situation, it is inevitable that some persons will be terminated. As has been noted, "the mere termination of a competent employee when the employer is forced to make cutbacks" is not, by itself, actionable. This is not a case in which there was evidence that management favored younger workers (compare *Rose,* p 227), tended to fire older workers (compare *Blackwell,* p 1181), or suggested that older workers were disfavored (compare *Laugesen,* p 313). Instead, the effect of the plan was felt by workers of all ages. See *Holley,* p 1167. Plaintiff's showing that two employees who had the same performance rating as he were retained is not sufficient to show that age was a determining factor in his termination.

We do not have before us the hypothetical situation posited by the majority, i.e., "if the members of that group immediately below the cutoff line scored better than employees being retained in other groups, then some employees in the 'protected' group who deserved to be retained would be discharged because of their age . . . ." *Ante,* p 690. What the record *does* show is that two younger people whose performance was rated the same as plaintiff's were also discharged, as were over twenty others of varying ages with better performance records. On this record, it defies logic to conclude that "the plan . . . required . . . unequal treatment because of age . . . ." *Ante,* p 690.

Plaintiff next argues that "age discrimination was designed into the evaluation process . . . ." The record establishes that the process of ranking

employees within the plan's various groups, at the end of which process plaintiff was the "low man," was done on the basis of the employees' performance evaluations. In support of this claim, he offered the following:

> At an earlier point in his career, the annual evaluations of Mr. Matras were highly favorable, and these evaluations made note of the fact that he was an "aggressive young man";
>
> At the time of his termination, Mr. Matras was the oldest member of the group supervised by Bob Johnson, the person who gave Mr. Matras these low evaluations;
>
> Mr. Matras was the only person in Johnson's group to be fired;
>
> \* \* \*
>
> Mr. Matras was enjoying one of his best years when he was terminated; and
>
> Johnson had considerable discretion in grading the performance of the members of his group, including Mr. Matras.

I fail to see any relevance of plaintiff's earlier favorable evaluations to his later poor evaluations. The later ratings were, in large part, documented by objective failures in performance. Nor can I attach any significance to the fact that plaintiff was the oldest and only person in Johnson's group who was terminated. The fact remains that plaintiff ranked 156th out of the total group of 160 in terms of performance. Moreover, plaintiff simply has presented no evidence that the evaluation process was applied differently to him individually or to workers of any particular age generally.

Finally, plaintiff relies on other evidence, i.e., that he was nicknamed "Gramps" by his coworkers and that "Johnson was responsible for a forti-

eth birthday party for Mr. Matras, despite Mr. Matras' desire not to call attention to this milestone." There is no evidence that anyone who called plaintiff "Gramps" had any part in the decision to terminate him. Regarding the "birthday party," all that the record establishes is that Johnson acknowledged plaintiff's birthday at a gathering of the employees in Johnson's group celebrating the group's having won some money in a company incentive program. Johnson testified that he always recognized his employees' birthdays.

Certainly, "it is an economic tragedy that anyone who wishes to work in this country is forced to lose his job." *Gill v Union Carbide Corp,* 368 F Supp 364, 367 (ED Tenn, 1973). Nonetheless, like the ADEA, I think that the FEPA was "not intended as a vehicle for judicial review of business decisions." *Kephart, supra,* p 1223. Therefore, I conclude that plaintiff did not present evidence that age was a determining factor in his discharge.

ARCHER, J., took no part in the decision of this case.