Edward and Georgiana
GAVIE, Plaintiffs,

v.

The STROH BREWERY COMPANY, an
Arizona Corporation, Local 1038 & 181
of National Conference of Brewery and
Soft Drink Workers of the U.S. & Cana-
da, an Affiliate of the International
Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of Amer-
ica; City Marketing, Inc., a Michigan
Corporation; Robert Holland; Robert
E. Knox; John Doe & Mary Doe; Mul-
ti-Employer Benefit Plan Administra-
tors, Inc., a Michigan Corporation;
Dean G. Holefca; Individually, Jointly
and Severally, Defendants.

Civ. A. No. 86–70019.

United States District Court,
E.D. Michigan, S.D.

Aug. 13, 1987.

Michael Conway, Troy, Mich., Emil D. Berg, Detroit, Mich., for Edward and Georgiana Gavie.

Constance M. Ettinger, Robert M. Vercruysse, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for Stroh Brewery Co.

Carol L. Vondale, Mosher, Vondale & Gierak, P.C., Bloomfield Hills, Mich., for Bd. of Admin. of the Stroh Retirement Plan & Trust for Empl. Rep. by Teamsters Local 181 and 1038.

Robert M. Justin, Rochester, Mich., for Holefca and Multi Plan Administrators.

Jerome R. Watson, Miller, Canfield, Paddock & Stone, Detroit, Mich., for City Marketing and Robert Holland.

Gerry M. Miller, Kenneth Dau-Schmidt, Milwaukee, Wis., Robert E. Day, Gabrielle Lee Caruso, Mager, Monahan, Donaldson & Alber, Detroit, Mich., for Local 1038 and Robert Knox.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

This is one of six companion cases.[1] Plaintiffs[2] selected this case to test their theories of liability. Plaintiffs allege that defendants[3] conspired to terminate their

---

1. The other five cases are: *Gayeski v. Stroh,* No. 86–0013; *McKinnon v. Stroh,* No. 86–0014; *Consiglio v. Stroh,* No. 86–0015; *Capobianco v. Stroh,* No. 86–0017; and *Turchin v. Stroh,* No. 86–0018.

2. I refer to William Gayeski, John McKinnon, Vito Consiglio, Dominic Capobianco, Donald Turchin, and Edward Gavie as "plaintiffs."

3. Defendants are: The Stroh Brewery Company ("Stroh"), plaintiffs' former employer; Local 1038 of the Brewery & Soft Drink Workers of the U.S. and Canada ("Local 1038" or "union"),

employment. They charge breach of contract, interference with prospective economic advantage, intentional infliction of emotional distress, and age discrimination under the Elliott-Larsen Civil Rights Act ("Elliott-Larsen Act"), Mich.Comp.Laws §§ 37.2101–37.2804. Their wives claim loss of consortium. Defendants move for summary judgment. I have jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441(a)-(b).

## I. BACKGROUND

Plaintiffs worked for Stroh as bargaining unit employees of the distribution division ("City Sales"). In 1970, Stroh moved City Sales from the Detroit brewery to a separate location. Employees, including plaintiffs, who moved with City Sales won the right to bump back with full seniority into brewery jobs if Stroh ever sold or closed City Sales ("1970 Agreement").

Stroh decided in April, 1984 to sell City Sales to City Marketing. Stroh informed the union of the prospective sale and offered to extend the collective bargaining agreement covering City Sales employees ("Contract") on a day-to-day basis beyond its June 30, 1984 expiration date. The union accepted the offer. During the summer of 1984, City Marketing offered employment to all City Sales employees on terms to be negotiated by the employees' bargaining representative after the sale closed on November 1, 1984. Plaintiffs rejected the offer and chose to bump back into brewery jobs under the 1970 Agreement.

On February 8, 1985, Stroh announced its plan to close the brewery and to lay off permanently all brewery employees on August 31, 1985. Stroh agreed with the union to pay severance benefits and to provide sufficient pension funding to enable the Retirement Plan to pay vested, accrued benefits on an accelerated and non-dis-

counted basis to employees who executed a release of claims (May 3, 1985 Shutdown Agreement ("Shutdown Agreement"), Agreements, ¶¶ 6–7, 13). Because plaintiffs refused to sign releases, they did not receive the benefits until Stroh and the union amended the Shutdown Agreement on January 16, 1987 to eliminate the release requirement for plaintiffs.

## II. PRE–EMPTION

Section 301 of the Labor Management Relations Act, Pub.L. No. 80–101, § 301, 61 Stat. 136, 156–157 (1947), 29 U.S.C. § 185 ("§ 301"), pre-empts any state claim that is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985); *see also Int'l Bhd. of Elec. Workers, AFL–CIO v. Hechler*, — U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), and creates federal jurisdiction by transmuting the claim into a federal cause of action. *Franchise Tax Board of California v. Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23–24, 103 S.Ct. 2841, 2853–54, 77 L.Ed.2d 420 (1983); *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 376 F.2d 337 (6th Cir.1967), *aff'd*, 390 U.S. 557, 560, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968). Section 301 does not pre-empt state law that "confers nonnegotiable state-law rights ... independent of any right established by contract." *Allis-Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912.

Plaintiffs' common law claims allege: (1) failure of Stroh, the union, and Knox to inform plaintiffs before they transferred from City Sales of the brewery's impending closure (Complaint, ¶¶ 2.5, 2.7, 3.3(a)-(b), 3.4); (2) breach of promise by Stroh to employ plaintiffs until retirement, absent just cause for discharge (Complaint, ¶¶ 4.1–

plaintiffs' collective bargaining representative; Robert Knox ("Knox"), President of Local 1038; City Marketing, Inc. ("City Marketing"), purchaser of Stroh's City Sales distribution division; Robert Holland ("Holland"), President of City Marketing; Multi-Employer Benefit Plan Administrators, Inc. ("MEPBA"), administrator of the Stroh Retirement Plan and Trust ("Retire-

ment Plan"); Dean Holefca ("Holefca"), President of MEBPA; and the Board of Administration of the Retirement Plan ("Board").

I dismissed Local 181 of the Brewery & Soft Drink Workers of the U.S. and Canada on March 3, 1987 because plaintiffs admit it has no connection with the suit. Gavie Depo. (Vol. I) at 116–17.

4.8 (Count II)); and (3) negotiation of an agreement between the union and Stroh requiring release of claims by employees as a prerequisite to receipt of severance pay and accelerated retirement benefits (Complaint, ¶ 3.3(c)). In addition, plaintiffs charge all defendants with age discrimination prohibited by the Elliott-Larsen Act. (Complaint, ¶¶ 4.1–4.7 (Count III)).

 Section 301 pre-empts the common law claims because each one requires analysis and interpretation of a labor agreement: the first claim requires analysis of the 1970 Agreement and the Contract (¶¶ 15.1, 22.1, Add. D); the second claim requires analysis of the Contract (¶¶ 2.4, 15.1, 22.3, Add. D) and the Shutdown Agreement (Agreements, ¶ 1); and the third claim requires analysis of the Contract (Art. 20, Add. B, D), the Shutdown Agreement (Agreements, ¶¶ 6–7, 13), and the November 30, 1982 Retirement Plan (as amended June, 1985) (Art. 5). Accordingly, I treat the common law claims as a hybrid federal cause of action charging breach of a collective bargaining agreement and unfair union representation. *Allis-Chalmers*, 471 U.S. at 220, 105 S.Ct. at 1916 ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law."); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

 Section 301 does not pre-empt the age discrimination claim because it invokes a state statute that "confers state law rights ... independent of any right established by contract." *Allis-Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912. *See also Trombley v. Ford Motor Co.*, 666 F.Supp. 972 (E.D.Mich.1987) (Feikens, J.) (§ 301 does not pre-empt state law Handicappers' claim); *Nolte v. Blue Cross Blue Shield of Michigan*, 651 F.Supp. 576 (E.D.Mich.1986)

(Feikens, J.) (same); *Turk v. General Motors Corp.*, 637 F.Supp. 739 (E.D.Mich. 1986) (Cohn, J.) (same); *Austin v. New England Telephone and Telegraph Co.*, 644 F.Supp. 763 (D.Mass.1986) (same); *Cronan v. New England Telephone and Telegraph Co.*, 1 Ind.Emp.Rights Cases (BNA) 658 (D.Mass. April 11, 1986) (same); *Scott v. New United Motor Mfg. Inc.*, 632 F.Supp. 891 (N.D. Cal.1986) (§ 301 does not pre-empt state law race discrimination claim).[4] Cf. *Kazor v. General Motors Corp.*, 118 L.R.R.M. (BNA) 2637, 2639 (E.D.Mich. March 29, 1984) [Available on WESTLAW, DCT database] (Feikens, C.J.) (holding prior to *Allis-Chalmers* that Michigan Handicappers' Act confers "a statutory right that exists independent of any protection afforded by the collective bargaining agreement"); *Sears v. Ryder Truck Rental, Inc.*, 596 F.Supp. 1001, 1003 (E.D.Mich.1984) (Gilmore, J.) (holding prior to *Allis-Chalmers* that Michigan Elliott-Larsen Act confers "an independent action to vindicate discrimination").

## III. SECTION 301 CLAIMS

A hybrid § 301 claim is subject to a limitations period of six months. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Plaintiffs' cause of action accrued no later than May 31, 1985 when Stroh closed the Detroit brewery and permanently laid off brewery employees, including plaintiffs. Plaintiffs' claims are barred by the statute of limitations because they filed suit on December 4, 1985, more than six months after their cause of action accrued.

 Plaintiffs insist their cause of action accrued no earlier than sometime in July, 1985, when MEBPA representatives explained to plaintiffs that they would receive severance pay and accelerated pension benefits only after executing releases of potential claims. The argument is specious. Plaintiffs either knew or should have

---

**4.** Case authority is divided on this issue. *Trombley, supra,* at 973 n. 2. I submit that decisions pre-empting state civil rights actions with § 301 mistakenly frame the controlling issue as whether the collective bargaining agreement in any way overlaps the state law protections. The proper inquiry is whether the state protections would exist even if the contractual protections did not.

known by May 31, 1985 of the release requirement created by the May 3, 1985 Shutdown Agreement, and of every other basis for the claims they now assert. *Cf. Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (Title VII cause of action accrued when the Board of Trustees notified professor by letter of its final decision denying him tenure, and not one year later when the Board's decision took effect).

Even if the claims were timely, Stroh and the union would win summary judgment because as a matter of law the union did not breach its duty of fair representation.[5] This duty obligates a union "to serve the interests of all members [of a bargaining unit] without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca,* 386 U.S. at 177, 87 S.Ct. at 910. *See also Ford Motor Co. v. Huffman,* 345 U.S. 330, 337, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953) (employees' bargaining representative obligated "to make an honest effort to serve the interests of all ... members [of the bargaining unit], without hostility to any"). A breach occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916.

■ Plaintiffs claim the union breached its duty by failing to inform them of the brewery's impending closure before plaintiffs decided in 1984 to reject employment with City Marketing and to bump back into a brewery job. The claim has no factual basis. Knox first found out about the brewery closure on February 8, 1985, one day before Stroh's public announcement. Knox Depo. at 73–75. The Chairman and Vice President of City Marketing corroborate Knox's claim: both deny knowing about the closure before City Marketing purchased City Sales in 1984 and affirm learning of it initially in February, 1985. Holland Depo. at 55–56; Don Hill Affidavit (Nov. 5, 1986) ("Hill Affidavit") at ¶ 2.

Even Stroh's own Vice President of Operations first learned about the closure in February, 1985. Tonna Depo. at 9–10. Plaintiffs proffer no evidence to support a finding that the union knew about the closure before they decided to bump back into the brewery; plaintiffs simply assert that the union must have known. Gavie Depo. (Vol. I) at 142–147; (Vol. II) at 5–11. The bald assertion does not preclude summary judgment. *Cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) ("[P]laintiff may [not] defeat a defendant's properly supported motion for summary judgment in a conspiracy or libel case, for example, without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial of a conspiracy or of legal malice.").

■ Plaintiffs also claim the union breached its duty of fair representation by agreeing with Stroh to condition severance pay and accelerated pension benefits on a release of claims. The claim has no basis in law. The duty of fair representation accommodates a bargaining representative's need for flexibility:

Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented.... Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees.... The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

---

5. Because plaintiffs ignored contractual remedies, they can prevail against Stroh only if they first demonstrate unfair union representation. *Vaca,* 386 U.S. at 186, 87 S.Ct. at 914.

*Huffman,* 345 U.S. at 337–338, 73 S.Ct. at 686. The union believed the release requirement was a reasonable price, and perhaps the only price Stroh would accept, for severance pay and accelerated pension benefits. Knox Depo. at 81–87, 96–97, 111; Holefca Depo. at 48–49, 72–73. Plaintiffs proffer no evidence to support a finding that the union made its judgment in bad faith or with hostility toward plaintiffs.

 In addition, the § 301 claims fail because plaintiffs have not identified any arguable breach by Stroh of a collective bargaining agreement. Plaintiffs claim first that Stroh failed to inform them of the brewery's impending closure when in 1984 they bumped back into brewery jobs. There is no evidence that Stroh had a definite plan in 1984 to close the brewery. Moreover, Stroh had no contractual duty to disclose the plan if it had one. The Contract (Add. D) expressly required only that Stroh bargain over the effects of closure, and implicitly required only that Stroh provide sufficient notice of closure to permit good faith negotiations. Stroh discharged these duties by notifying the union in February, 1985 and by negotiating the Shutdown Agreement. Plaintiffs next claim that Stroh breached an agreement to employ them until retirement, absent just cause of discharge. Stroh agreed to discipline and discharge only for just cause (Contract, ¶ 15.1), but it did not give up in the Contract its right to close the brewery and to lay off employees. Plaintiffs concede that Stroh never made a separate agreement with them ensuring employment until retirement. Gavie Depo. (Vol. II) at 71–72, 84–87. Even if there were such a separate agreement, I could not enforce it. Contract, ¶ 22.3; *J.I. Case v. NLRB,* 321 U.S. 332, 338–339, 64 S.Ct. 576, 580–581, 83 L.Ed. 762 (1944). Plaintiffs also charge that Stroh improperly conditioned receipt of benefits under the Shutdown Agreement on a release of claims. I doubt the efficacy of release requirements: often they spur the very litigation they are intended to prevent. But Stroh had no contractual obligation to refrain from demanding releases in exchange for benefits it had no duty to provide.

## IV. AGE DISCRIMINATION

 To prevail on their age discrimination claim, plaintiffs must prove age was a "determining factor" in Stroh's decision to terminate their employment. *Matras v. Amoco Oil Co.,* 424 Mich. 675, 683, 385 N.W.2d 586 (1986). If Stroh would have terminated plaintiffs regardless of their age, then age was not a determining factor. *Matras,* 424 Mich. at 691, 385 N.W.2d 586. Because Stroh closed its brewery and terminated all brewery employees, plaintiffs cannot possibly sustain this burden by simply challenging the brewery's closure.

Plaintiffs respond to the difficulty by weaving Stroh's decision into a fanciful conspiracy theory. Plaintiffs say that defendants knew by the summer of 1984 about Stroh's decision to close the brewery and conspired to keep it a secret so that older, higher paid employees of City Sales would lose their jobs by rejecting employment with City Marketing and transferring to the brewery. Plaintiffs say the conspirators included a release requirement in the Shutdown Agreement to protect themselves from liability for the scheme.

Plaintiffs' conspiracy theory has no basis in fact. The theory requires evidence to support a finding that defendants knew by the summer of 1984 that Stroh would close its brewery in May, 1985. All the evidence indicates that defendants knew no earlier than February, 1985 of Stroh's plan to close the brewery, and that Stroh itself had no definite plan before that time to close the brewery. Knox Depo. at 73–75; Holland Depo. at 55–56; Hill Affidavit at ¶ 2; Tonna Depo. at 9–10; Gavie Depo. (Vol. I) at 66–69. Plaintiffs' subjective belief that defendants must have known does not preclude summary judgment. *Anderson, supra,* 477 U.S. at ——, 106 S.Ct. at 2514.

Moreover, plaintiffs do not articulate a plausible motive for each defendant's participation in the alleged conspiracy. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 595, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986) ("[T]he absence of any plausible motive to engage

in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56(e).''). Plaintiffs say City Marketing wanted to operate without the older, higher paid employees of City Sales. But City Marketing had no duty to pay the wages and benefits provided by City Sales or to recognize the seniority accrued by employees at City Sales; it was free to set its own terms of employment, pending negotiations with its employees' bargaining representative. *NLRB v. Burns,* 406 U.S. 272, 281–296, 92 S.Ct. 1571, 1579–86, 32 L.Ed.2d 61 (1972). Plaintiffs say the union and Knox facilitated the scheme to curry favor with City Marketing, but plaintiffs fail to identify what the union and Knox hoped to gain. Finally, plaintiffs offer no explanation for why Stroh would volunteer to keep aged and expensive employees on its payroll and to provide them substantial benefits under the Shutdown Agreement.

Furthermore, defendants' conduct following the alleged formation of the conspiracy undermines plaintiffs' theory. City Marketing offered plaintiffs employment (Gavie Depo. (Vol. I) at 35–36), which is a peculiar way to induce a person to work for someone else. Neither Stroh nor MEBPA discouraged plaintiffs from accepting City Marketing's offer or encouraged them to bump back into the brewery. Gavie Depo. (Vol. I) at 71–72, 84–87. Although Knox accurately reported to City Sales employees that City Marketing would be seeking concessions during contract negotiations, he encouraged employees, including plaintiffs, to strengthen the union's bargaining position by accepting employment with City Marketing. Gavie Depo. (Vol. II) at 42–44; (Sep. Rec.) at 10–11. Knox painted an unattractive picture of work in the brewery and even speculated that the brewery might cut capacity or close down completely someday. Gavie Depo. (Vol. II) at 44–49; (Sep. Rec.) at 12–17. Plaintiffs chose to bump back into the brewery despite, and not because of, defendants' conduct.

■ There is no evidence to support plaintiffs' belief that defendants conspired, because of plaintiffs' age or for any other reason, to force plaintiffs into work at the brewery, knowing it would soon close. Plaintiffs had a choice during the summer of 1984 between accepting employment with City Marketing and bumping back into the brewery. Plaintiffs chose for their own reasons to bump back into the brewery. Gavie Depo. (Vol. I) at 39–43. An unsupported charge of age discrimination does not permit them to reconsider the choice with the benefit of hindsight.

## V. ERISA

■ The complaint states no claim under the Employment Retirement Income Security Act of 1974 ("ERISA"). I address the statute because during the initial hearing on defendants' motions for summary judgment I asked whether ERISA required the Board to pay plaintiffs their pension benefits immediately, even without a release of claims. Stroh and the union largely mooted the issue by amending the Shutdown Agreement on January 16, 1987 to eliminate the release requirement for plaintiffs. Plaintiffs received their benefits shortly after the amendment. Plaintiffs now insist they are entitled to interest on the funds for the approximately one and one-half years they were in escrow.[6]

■ Interest is due plaintiffs only if they had an unqualified right to immediate receipt of the funds. *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984) (interest due from the date on which beneficiary was "entitled" to funds). Plaintiffs had no such entitlement. The Board had the discretion, but not the duty, to disburse pension benefits before an employee's sixty-fifth birthday.[7] The Shutdown Agree-

**6.** Administrative expenses other than the cost of defending this suit have consumed the interest earned on the funds.

**7.** The Retirement Plan provides:

Benefit payments shall be made or commence at the time determined by the Board of Administration in its sole and absolute discretion.... In no event, however, shall payments be made or commence later than sixty (60) days after the close of the Plan Year in

ment limited the Board's discretion by conditioning early disbursement on execution of a release that plaintiffs refused to sign. Until Stroh and the union amended the Shutdown Agreement to eliminate the release requirement, the Board had no choice but to escrow the funds until plaintiffs reached their sixty-fifth birthdays. Accordingly, plaintiffs are not entitled to interest.

## VI. DISPOSITION

Defendants' motions for summary judgment are GRANTED. Defendants shall submit a motion for entry of judgment in the companion cases.

IT IS SO ORDERED.

which the latest of the following occurs: (a) the Participant attains the age of sixty-five (65), or (b) the tenth (10th) anniversary of the Participant's participation in the Plan, or (c) the Participant's service with the Employer is terminated.

Retirement Plan (Nov. 30, 1982; as amended June, 1985), at ¶ 5.09.

Plaintiffs have not reached age sixty-five (65).