C. THORREZ INDUSTRIES, INC. v CIVIL RIGHTS COMMISSION

Docket No. 78-537. Submitted October 10, 1978, at Lansing.—Decided February 21, 1979.

Plaintiff, C. Thorrez Industries, Inc., is an automatic screw machine company. It maintained two plants, one of which employed about 50 people, the other, only three or four. At the time in question plaintiff was looking for additional employees to set up and operate its screw machines, a job requiring a good deal of skill and about three years of training. To operate other machines in plaintiff's business required little training. William Schoening was a long-time and valued screw machine operator. Sandra Fullerton, whose complaint to defendant, Civil Rights Commission, resulted in the instant action, was hired by plaintiff as a secondary machine operator. The wife of William Schoening telephoned Mr. Thorrez, president of plaintiff, to tell him that she did not want her husband working under the same roof with Sandra Fullerton. Mr. Thorrez related this conversation to Mr. Schoening, who explained to Mr. Thorrez that he would quit to keep peace in the family but acknowledge that he would stay on if Mrs. Fullerton were discharged. Mrs. Fullerton was discharged by plaintiff and was told that the reason was a personality conflict. She then filed a complaint alleging sex discrimination with the Civil Rights Commission, which issued a cease and desist order ordering her reinstated with full back pay. Plaintiff appealed to the Jackson Circuit Court which held that sex was not a factor in her discharge, Russell E. Noble, J. The Civil Rights Commission appealed. *Held:*

1. In order for a woman to show a prima facie case of sex discrimination she must show she is a member of the class entitled to protection under the act and that, for the same or similar conduct, she was treated differently than a man.

2. The decision to terminate Mrs. Fullerton rather than Mr. Schoening was based upon her level of skill and training and did not constitute sex discrimination.

Affirmed without cost, interpretation of a statute being involved.

REFERENCE FOR POINTS IN HEADNOTE

15 Am Jur 2d, Civil Rights §§ 103, 154 *et seq.*

CIVIL RIGHTS — DISCRIMINATION — SEX DISCRIMINATION — EVIDENCE — PRIMA FACIE CASE — DISPARATE TREATMENT.

A woman, to show a prima facie case of sex discrimination, must show that she is a member of the class entitled to protection under the act and that, for the same or similar conduct, she was treated differently than a man.

*Kelly, Kelly & Kelly,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael A. Lockman,* Assistant Attorney General, and *Gary G. Kress,* Assistant Attorney General, for defendant.

Before: DANHOF, C.J., and BASHARA and CYNAR, JJ.

PER CURIAM. Defendant appeals as of right from a circuit court order entered on January 20, 1978. That order reversed the decision of the Michigan Civil Rights Commission and held that no sex discrimination occurred in the discharge of Sandra Fullerton from plaintiff's employ.

The facts are not in dispute. Plaintiff is an automatic screw machine company with two plants. One, located in Jackson, Michigan, employed approximately 50 employees, while the other, located 15 miles away, employed three or four employees. The business is geared toward production from its automatic screw machines.

At the time in question plaintiff was seeking additional automatic screw machine operators and set-up men. To be able to set up and operate such machines requires approximately three years of training. To operate other machines in plaintiff's business requires very little training.

Sandra Fullerton had been hired by plaintiff in August of 1972. She worked as a secondary machine operator in plaintiff's Jackson plant. Prior to

her discharge on or about October 20, 1972, she satisfactorily performed her job and had received no discipline.

Sandra Fullerton's discharge culminated from a series of events commencing with a phone call from Mrs. William Schoening to Albert Thorrez, president of C. Thorrez Industries. Mrs. Schoening's husband worked for plaintiff as an automatic screw machine operator and set-up man in plaintiff's Jackson plant. Mrs. Schoening informed Mr. Thorrez that her husband and Ms. Fullerton had had a "former relationship" and that she did not want her husband working under the same roof with Ms. Fullerton.

Subsequently, Thorrez called William Schoening into his office and informed him of the conversation with his wife. In response Mr. Schoening said he would quit his job to keep peace in the family. Faced with the loss of a valued employee, Thorrez asked Schoening if he would stay on if Ms. Fullerton were discharged. Schoening answered affirmatively. Thereafter, on October 20, 1972, Ms. Fullerton was discharged.

Subsequently, Ms. Fullerton filed a petition with the Michigan Department of Civil Rights. In an order dated July 27, 1976, that agency concluded that the action of Ms. Fullerton's employer constituted unlawful discrimination on the basis of sex. Therefore, the agency issued a cease and desist order and ordered Ms. Fullerton reinstated with full back pay.

Plaintiff appealed this decision to circuit court. After a hearing on the matter the court ruled in an opinion dated January 11, 1978, that Ms. Fullerton's sex was not a factor in her discharge. Rather, she was discharged in order to retain a skilled screw machine operator. Nor did the court

find any discrimination in plaintiff's failure to transfer her to its other plant. In so ruling, the court accepted the testimony of Albert Thorrez who stated that no transfer would have been possible if Ms. Fullerton were a man, since there were no openings at the other plant.

The statute under which this action was brought, MCL 423.303a; MSA 17.458(3a)[1] states:

> "Sec. 3a. It is an unfair employment practice:
> (a) For any employer, because any individual is between the ages of 18 and 60, or because of the *sex* of any individual, to refuse to hire or otherwise to discriminate against him with respect to hire, tenure, terms, conditions or privileges of employment. Any such refusal to hire or discrimination shall not be an unfair employment practice if based on law, regulation, the requirements of any federal or state training or employment program or on a bona fide occupational qualification. It shall not be an unfair employment practice to refuse to select an individual over the age of 35 because of his age for an apprenticeship or an on-the-job training program intended to have a duration of more than 4 months." (Emphasis added.)

The circuit court's findings under this statute are reviewed pursuant to the "clearly erroneous" standard of GCR 1963, 517.1. *Civil Rights Comm v Chrysler Corp,* 80 Mich App 368, 372-373; 263 NW2d 376 (1977).

In order to make a prima facie showing of sex discrimination a woman must show she was a member of the class entitled to protection under the act and that, for the same or similar conduct, she was treated differently than a man. See *Civil Rights Comm v Chrysler Corp, supra,* p 373. How-

---

[1] This statute has since been repealed and replaced by a provision in the Michigan Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq. See* specifically MCL 37.2202; MSA 3.548(202).

ever, with regard to racial discrimination, the court in *Civil Rights Comm v Chrysler Corp, supra,* p 373 noted:

"The crux of a civil rights suit is that similarly situated people have been treated differently because of their race."

The same is true where sex discrimination is alleged.

In the present case, plaintiff was faced with an irremediable dilemma. Due to circumstances not of his own making he had to terminate the employment of one of two employees. The fact that he chose to discharge the female employee, rather than the male employee, does not make out a case of sex discrimination. This is because the two employees were not "similarly situated". Mr. Schoening was a highly-skilled, highly-trained automatic screw machine operator. Ms. Fullerton was a semiskilled secondary machine operator with little training. The circuit court found that the decision to terminate Ms. Fullerton was based upon her level of skill and training. As noted in *Pond v Braniff Airways, Inc,* 500 F2d 161, 165 (CA 5, 1974):[2]

"Of course it is true * * * that where an employer can demonstrate no discrimination in the selection or advancement of employees, but rather that the employer in the best of faith merely weighed each person's talents then choosing the man over the woman (or the woman over the man), no case is made out under Title VII."

Therefore, we hold that the decision to terminate

---

[2] The federal precedent, although not binding, is persuasive authority in this area. See *Civil Rights Comm v Chrysler Corp, supra,* p 375, fn 4.

Ms. Fullerton, rather than Mr. Schoening, did not constitute discrimination on the basis of sex.

Defendant also contends that the decision to terminate Ms. Fullerton, as opposed to transferring her to plaintiff's other plant, constituted sex discrimination.

Plaintiff's president testified that there were no openings at the other plant and that he would not have transferred her if she were a man.[3] This testimony was believed by the circuit judge and incorporated into his findings of fact. These findings are not clearly erroneous, GCR 1963, 517.1, and will not be disturbed.

We conclude that no sex discrimination resulted from plaintiff's failure to transfer Ms. Fullerton. Since there are no other employees who were terminated and not transferred by plaintiff, defendant is unable to point to any "similarly situated" male employee receiving disparate treatment from plaintiff. Even if there had been a similarly situated male employee, the circuit court's findings indicate that no disparate treatment would have occurred. Under these circumstances, plaintiff was under no legal obligation to transfer Ms. Fullerton to another plant.

Affirmed. No costs, interpretation of a statute being involved.

---

[3] Plaintiff's president also testified that he didn't consider transferring Ms. Fullerton because no woman had ever applied to work at that plant and because the jobs there required heavy lifting. However, the circuit judge ruled that these were not the reasons for refusing to effect a transfer.