884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James YOUNG, Plaintiff-Appellant,
v.
PARKE-DAVIS & COMPANY, Defendant-Appellee.
 No. 88-2217.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1989.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and THOMAS G. HULL, Chief District Judge.*
 PER CURIAM.
 
 
 1
 James Young appeals from a district court decision granting defendant's motion for summary judgment. Plaintiff, who was terminated from his employment pursuant to a company-wide reduction in force, sued his former employer, Parke-Davis, for race and age discrimination alleging violations of federal and state law, 42 U.S.C. Sec. 2000e, et seq. (Title VII), Mich.Comp.Laws Ann. Sec. 37.2101, et seq. (Elliott-Larsen Civil Rights Act), and for the alleged breach of an implied provision in the parties' employment agreement allowing only "for cause" terminations. We conclude the district court correctly determined that plaintiff failed to present evidence essential to each of his claims, so we affirm.
 
 I.
 
 2
 Plaintiff, a black male, was employed by Parke-Davis (a division of Warner-Lambert Company) from 1966 until his discharge on January 2, 1987. Plaintiff began his employment as a janitor in the Detroit facility, and worked his way up in the company until he was hired for a managerial position in the materials management department of the Rochester, Michigan, facility in 1982. At the time of his discharge, plaintiff was 42 years old and was employed as a Grade 6 level managerial employee, with the title of Supervisor, Shipping and Receiving/Internal Transport.
 
 
 3
 According to unrefuted evidence presented by the defendant, Warner-Lambert implemented a corporate-wide directive to institute a number of cost-saving measures in 1985-86. The Rochester facility of Parke-Davis implemented a number of changes in March 1986. The facility reorganized and reduced the number of employees by offering voluntary retirement with enhanced benefits, and by simply eliminating other positions. Young's job was not eliminated in this March 1986 shake-up. Nevertheless, Young claims that shortly after this reorganization, he saw a corporate organization chart from which his job had been eliminated. He mentioned his job security concern to two superiors, who allegedly told Young that he need not worry.
 
 
 4
 In May 1986, the Rochester facility was instructed to reduce costs further and to eliminate additional positions. Three high-ranking officials at the Rochester facility met and identified 59 positions to be eliminated. A number of these positions were hourly, but the majority (38) were salaried positions. The eliminations were announced on September 9, 1986, and took effect on January 2, 1987. Plaintiff's position was one of three eliminated from the materials management department.
 
 
 5
 Although plaintiff's position was eliminated, the functions connected with his job still had to be performed by someone at Parke-Davis, so two Grade 7 supervisors within the department assumed the duties that formerly had belonged to Young. These two supervisors were white males, under the age of 40 at the time of the reduction in force. Young spent much of the time between the announcement of the reductions and their actual implementation training these two employees.
 
 
 6
 During this time, Parke-Davis had in effect a policy dealing with job eliminations, requiring the company to make an effort to transfer employees whose positions had been eliminated. Due to the corporate-wide nature of the reductions, Parke-Davis believed it impossible to transfer employees between facilities. There were only three open positions within the Rochester facility, and three qualified employees whose positions had been eliminated were transferred into these vacant positions. Plaintiff was not qualified for the open jobs so he, like almost all other affected employees, was not transferred to another position within Parke-Davis.
 
 
 7
 Soon after the reduction in force was announced, Young filed a complaint with the EEOC. Young alleged that Parke-Davis relied upon discriminatory factors in choosing to discharge Young rather than the two other supervisors within his department. Young also claimed that Parke-Davis applied its transfer policy inconsistently and discriminatorily. The EEOC ultimately issued a right-to-sue letter, and Young filed his complaint.
 
 
 8
 The district court set a schedule establishing a period for discovery. After discovery closed, the defendant moved for summary judgment on all counts, and the district court granted the motion. Young now appeals.
 
 II.
 
 9
 On appeal, Young argues that the district court erred in granting Parke-Davis' motion for summary judgment because there were disputed issues of material fact in all claims. While plaintiff is correct in asserting that summary judgment under Federal Rule of Civil Procedure 56 is improper when there is a genuine dispute as to any material fact, the mere allegation of a dispute, with no evidentiary support, is insufficient to defeat an otherwise proper summary judgment motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). All evidence must be viewed in the light most favorable to the non-moving party, Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970), and the moving party has the burden of demonstrating that no genuine issue of material fact exists. The Supreme Court has indicated that
 
 
 10
 the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.... The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case.
 
 
 11
 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Because Young had the burden of establishing the existence of discrimination based on race, of discrimination based on age, and of an employment contract, express or implied, promising to discharge employees only for cause, any failure to present specific, sufficiently probative evidence supporting these claims would justify a grant of summary judgment.
 
 III.
 
 12
 Young first argues that the district court erred in granting summary judgment in favor of Parke-Davis on the state and federal law race discrimination charges. Young contends that he presented sufficient evidence to establish a prima facie case of race discrimination, and that a factual dispute exists over the issue of whether Parke-Davis' proffered justification for its actions is pretextual. Despite plaintiff's arguments, we are convinced that plaintiff's evidence was insufficient to establish a prima facie case or to rebut the defendant's evidence establishing a legitimate justification for the discharge, if we assume, arguendo, that plaintiff did make out his prima facie case.
 
 
 13
 In analyzing the race discrimination claims, it is proper for this court to apply the same standards to both the Title VII and the Elliott-Larsen Civil Rights Act claims. Michigan courts have consistently and uniformly held that federal precedent is "persuasive in determining what the substantive law of racial discrimination in employment is at the present time." Civil Rights Comm'n v. Chrysler Corp., 80 Mich.App. 368, 375 n. 4, 263 N.W.2d 376 (1977); Clark v. Uniroyal Corp., 119 Mich.App. 820, 824, 327 N.W.2d 372 (1982). See Chonich v. Wayne County Community College, 874 F.2d 359 (6th Cir.1989). Michigan courts have thus applied the Title VII standard for establishment of a prima facie case set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973), to race discrimination cases brought under the Elliott-Larsen Civil Rights Act.
 
 
 14
 According to the McDonnell Douglas standard, a person presents a prima facie case of race discrimination
 
 
 15
 by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 16
 McDonnell Douglas, 411 U.S. at 802. If we regard Young's claim as one alleging a discriminatory failure to transfer Young, it is clear that Young does not present evidence sufficient to establish a prima facie case. During the time between the announcement and the implementation of the January 1988 reduction in force, it is undisputed that only three employees were transferred, rather than discharged, and it is also undisputed that Young was unqualified for any of the three positions filled by transferees. After the reduction, no positions of any kind remained unfilled. Uncontroverted evidence establishes that after announcement of the elimination of Young's job, Parke-Davis never failed to employ Young in a position for which Young was qualified and for which he applied.
 
 
 17
 While the district court and the parties seem to have treated this case as one involving a failure to hire, it is perhaps more accurate to regard Young's claim as one alleging a racially motivated discharge. Courts have adapted the McDonnell Douglas standard to apply to discriminatory discharge cases, so that
 
 
 18
 the final element of the prima facie case [may] be satisfied by proof that plaintiff was replaced by a non-minority worker, or, if plaintiff was not replaced, by proof that non-minority workers with comparable work records were retained while plaintiff was terminated.
 
 
 19
 Williams v. Ford Motor Co., No. 87-6328, slip op. (6th Cir. March 13, 1989) (unpub. op.), citing Wade v. New York Telephone Co., 500 F.Supp. 1170, 1174 (S.D.N.Y.1980).
 
 
 20
 It is clear that Young's evidence is also inadequate to establish a prima facie case under this standard. Young was able to present no evidence proving that similarly situated non-minorities were retained; in fact, Young admits that the majority of discharged, non-transferred employees were white, and that the other two employees discharged from plaintiff's department were white males. Young attempts to establish his case by noting that three white employees were transferred pursuant to Parke-Davis' announced transfer policy. Young maintains that the policy was applied erratically, and suggests that the failure to transfer him to another position pursuant to the policy implies race-based animus. However, it is undisputed that 58 positions were eliminated, only three employees were able to transfer to other positions, and Young was unqualified for the jobs to which others were transferred (the openings were in technical jobs, and were filled by employees with college degrees in scientific disciplines). Young also deems significant the fact that the two employees who assumed Young's former job duties were white, but this evidence does not aid Young's cause. The two supervisors who assumed Young's duties held higher level, Grade 7 positions that required a college degree and additional professional certification. Because Young, a Grade 6 supervisor, had neither a college degree nor the required professional certification, he cannot claim that Parke-Davis was required to keep him and eliminate one of the Grade 7 supervisors. Young failed to produce evidence establishing that non-minority employees with comparable qualifications were retained.
 
 
 21
 Finally, even if we assume that Young did establish his prima facie case, the district court was still correct in granting summary judgment on the basis that Young offered no proof that Parke-Davis' proffered, non-discriminatory justification was pretextual. According to McDonnell Douglas, as amplified by Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), after the plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for plaintiff's discharge. Once such justification is presented, the burden shifts back to the plaintiff to prove that the employer's stated justification is pretextual. Summary judgment is appropriate where plaintiff fails to produce evidence that raises a triable issue of fact concerning pretext. Clark, 119 Mich.App. at 826; Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir.1983). In the present case, Young offers absolutely no evidence tending to show that Parke-Davis' reduction in force, ordered by its corporate parent as part of a corporate-wide efficiency drive, was merely pretextual. Plaintiff additionally offers no evidence of racial animus, either directed towards him or towards black employees in general, that might suggest his discharge as part of an otherwise permissible reduction in force was based upon discriminatory considerations. The plaintiff's broad allegations of discrimination, based not on specific evidence but upon his own "feeling," are insufficient to create a factual dispute on the issue of pretext.
 
 IV.
 
 22
 Young's contentions in relation to his age discrimination claim are much like those relating to his race discrimination claim, and the evidence Young produces is similarly inadequate to create a dispute as to any factual issue material to a state law claim of discrimination based on age.[1] In a typical case, the plaintiff would follow steps like those described in the discussion of Young's race-based allegation--plaintiff presents a prima facie case, followed by the defendant's presentation of an allegedly legitimate reason for the contested employment action, followed by plaintiff's attempt to establish that the employer's stated justification is pretextual. However, the Michigan Supreme Court has held:
 
 
 23
 To establish a prima facie case of age discrimination when an employer lays off employees for economic reasons, the courts have required the employee to present sufficient evidence on the ultimate question--whether age was a determining factor in the decision to discharge the older protected employee.
 
 
 24
 Matras v. Amoco Oil Co., 424 Mich. 675, 684, 385 N.W.2d 586 (1986).
 
 
 25
 In the present case, plaintiff presented absolutely no documentary, testimonial or circumstantial evidence on the ultimate question--whether age was a factor in Parke-Davis' decision to eliminate Young's position. Young can point to no similarly situated, younger employees who were retained. Young notes that the two supervisors who assumed his job duties were under 40, but, as discussed above, these two men were employed at higher level jobs, had college degrees, and were professionally certified; they were not similarly situated. Hall v. American Bakeries Co., 873 F.2d 1133 (8th Cir.1989) (it is not discriminatory to discharge a worker and re-assign his job duties pursuant to a reduction in force). The two other employees eliminated from plaintiff's department were under 40. Additionally, plaintiff can point to no company policies, statements or personnel actions that might suggest a desire to rid the company of employees over the age of 40. To survive a summary judgment motion, a plaintiff must be able to point to some evidence suggesting that age was a "determining factor" in an employment decision, and the district court correctly held that Young failed to produce any such evidence.
 
 V.
 
 26
 As his final point on appeal, plaintiff contends that the district court erred in granting summary judgment against plaintiff on his discharge claim, a claim under the body of law arising from the Michigan Supreme Court's decision in Toussaint v. Blue Cross & Blue Shield, 408 Mich. 579, 292 N.W.2d 880 (1980). We think the district court correctly ruled that Young failed to establish the existence of an employment contract provision in which Parke-Davis agreed only to terminate for cause. Without such a provision, Michigan recognizes a presumption that employment relationships are terminable at will, Valentine v. General American Credit, Inc., 420 Mich. 256, 258-59, 362 N.W.2d 628 (1984); Toussaint, 408 Mich. at 599, so Young's discharge could not have been improper.
 
 
 27
 Young suggests that a number of Parke-Davis policy documents, together with statements made by various superiors, establish an agreement to discharge only for cause. Young first points to the published Warner-Lambert Equal Employment Opportunity and Affirmative Action Policy, deeming significant the fact that this publication promises the company will make all employment-related decisions in a manner that is equal and fair. Young next draws attention to the fact that the company's published and distributed policy statement dealing with job elimination states that the company will attempt to transfer eliminated employees in order to ensure fair and equitable treatment.[2] Finally, Young points to the "Warner Lambert Creed," a document that states, inter alia:
 
 
 28
 Performance will be evaluated on the basis of fair and objective standards. Creativity and innovation will be encouraged. Employees will be treated with dignity and respect. They will be actively encouraged to make suggestions for improving the effectiveness of the enterprise and the quality of work life.
 
 
 29
 Along with the documents, Young presented evidence of allegedly significant statements made to him by Parke-Davis personnel. After seeing an organizational chart without his name on it, before the actual decision to eliminate his job had been made, Young approached two superiors and questioned them about his job security. Both superiors allegedly told Young that he did not have to worry about his job. Additionally, Young points to a memorandum, sent to plaintiff by his immediate supervisor after Young took an improper employment-related action, telling Young that a repetition of the action would be "cause for termination." Young asserts that the specific use of the word "cause," coupled with the other statements of superiors and all of the policy statements calling for fair and equitable treatment establish an agreement between Parke-Davis and Young to terminate only for cause.
 
 
 30
 The district court correctly rejected this argument. The court in Toussaint recognized that normally, non-contract employees are terminable at will, and an exception to this rule exists only where an employer's oral or written communications clearly evidence an agreement to terminate only for cause. Toussaint, 408 Mich at 598; Wickes v. Olympic Airways, 745 F.2d 363 (6th Cir.1984) (recognizing that the Toussaint exception applies only where statements create a legitimate expectation that terminations will only be for cause). Here, the evidence adduced by Young falls well short of establishing an agreement to terminate only for cause. The three policy documents nowhere suggest that employees are not terminable at will but, rather, simply express the company's broad desire to operate fairly and equitably. The statement by Young's supervisor identifying one "cause" for termination merely describes one misdeed that would provide a reason for dismissal, but the statement cannot be presumed to mean that an employee can be dismissed only for just cause. See Batchelor v. Sears, Roebuck & Co., 574 F.Supp. 1480 (E.D.Mich.1983) (a manual listing several reasons for termination does not alter the employment relationship's at-will status). Finally, the reassurances provided by Young's supervisors fall well short of the type of express promises of continued employment so long as performance remains acceptable that have modified at-will contracts in other settings. See Boynton v. TRW, Inc., 858 F.2d 1178 (6th Cir.1988) (en banc ). Young failed to present any evidence from which a jury could have inferred the existence of an agreement to terminate only for cause, so the district court was correct in granting summary judgment on plaintiff's Toussaint claim.
 
 
 31
 Finally, even if we were to assume, arguendo, that Young's evidence proved an agreement to terminate only for cause, this court's recent holding in Boynton would preclude recovery and justify the grant of summary judgment. In Boynton, we held that a termination pursuant to a legitimate, economically-motivated reduction in force is a termination for cause. As discussed in connection with the discrimination claims, plaintiff presented no evidence suggesting that Parke-Davis' reduction in force, which resulted in the elimination of plaintiff's job, was not a proper, economically-driven business decision. Additionally, plaintiff could have had no expectation, based on the company's job elimination policy, that a different procedure would be followed, meaning Young may not recover under the portion of Boynton dealing with violations caused by an employer's failure to follow its own established procedures. The only people who could have expected to receive transfers under this policy were those qualified for jobs that remained open after the reduction in force, and it is uncontroverted that the only three such openings required employees with highly technical, scientific training and experience. Thus, even if Parke-Davis had agreed to terminate employees only for cause, Young would not have a cause of action because Boynton makes clear that his termination, pursuant to a legitimate reduction in force, was a for cause termination.
 
 
 32
 AFFIRMED.
 
 
 
 *
 Honorable Thomas G. Hull, Chief Judge, Eastern District of Tennessee, sitting by designation
 
 
 [1]
 The age discrimination claim involves only questions of state law, as Young does not contest the district court's conclusion that Title VII does not, as plaintiff asserted in his complaint, prohibit age discrimination. On appeal Young attempts to argue that Parke-Davis' actions violated the federal Age Discrimination in Employment Act, 29 U.S.C. Sec. 621, et seq., but Young did not raise this claim before the district court, so we may not consider it on appeal
 
 
 [2]
 There were actually two separate policy statements, published at different times, dealing with job eliminations. The defendant vehemently asserts that the statement cited and relied upon by plaintiff was not applicable at the time of plaintiff's discharge. Because we do not think the dispute affects the outcome, we presume that the plaintiff is correct in arguing that reliance upon the earlier statement was permissible